THE LAAND CORPORATION AND LOUIS POPP, APPELLANTS, v. HELEN R. FIRSCHING AND ALFRED S. HOWES, EXECUTORS OF THE ESTATE OF ROBERT A. FIRSCHING, DECEASED, RESPONDENTS.

No. 7630

April 30, 1975                        534 P.2d 916

[Rehearing denied May 30, 1975]

*Daryl Engebregson,* of Las Vegas, for Appellants.

*Beckley, Singleton, DeLanoy & Jemison, Chartered,* of Las Vegas, for Respondents.

**O P I N I O N**

By the Court, THOMPSON, J.:

The district court granted summary judgment to the Estate of Robert A. Firsching against Laand Corporation and Louis Popp. That judgment cancelled a contract for the sale of land in Nye County and quieted the estate's title thereto as against any claim asserted by Laand Corporation and Popp. This appeal is from that judgment. Since we do not perceive a genuine issue as to any material fact, NRCP 56, we affirm.

The contract was made in May 1969 between the seller Firsching and Popp and others as buyers. One month later the buyers assigned their interest in the contract to Laand Corporation. The contract called for the sale of 820 acres for the total price of $492,000. Twenty-five thousand dollars was paid down. The property was described by reference to sections, ranges and townships. Mention was not made of lots, blocks or subdivisions. The contract provided for the sale of 2½-acre parcels to third parties, the proceeds thereof to be deposited in escrow and divided between seller and buyer on a 60–40 ratio. Sales of certain numbers of such 2½-acre parcels were to be made on or before certain dates and the delayed balance of the purchase price would become due in May 1972.

The contract was amended in November 1969 to extend the period in which the designated number of 2½-acre parcel sales

were to be made, and requiring that a minimum of one hundred 2½-acre parcels be sold in any one year period commencing November 6, 1969. Firsching died November 15, 1969.

The contract did not obligate the seller to improve the property in any respect. The buyer acknowledged inspection of the property and examination of the zoning and use thereof. Conveyance thereof was to be made free of encumbrances except special assessment, conditions, restrictions, reservations, covenants, rights, and rights of way now of record. Four years earlier, in 1965, the seller had recorded a subdivision map contemplating division of the property into blocks and lots, but had done nothing more in furtherance of that scheme. The contract also provided that in the event of default by the buyer, the seller was privileged to declare the contract void and retain all monies received as liquidated damages.

The buyer never sold a 2½-acre parcel to a third party. Neither did the buyer make any payments pursuant to the contract other than the down payment and an additional sum of $1500. Prior to June of 1970, the buyer did, however, sell lots containing less than 10,000 square feet in an alleged subdivision. Its failure to sell 2½-acre parcels as required by the contract and to make the contemplated payments precipitated this litigation to cancel the contract for material breach. And, its sale of lots in an alleged subdivision, rather than the sale of 2½-acre parcels, caused Nye County in December of 1969 to file suit to enjoin further sales until relevant statutes and ordinances pertaining to subdivisions had been complied with.

It is clear from the record that the sale of 2½-acre parcels was legally permissible. It is equally clear that the sale of lots within an alleged subdivision was not permissible until necessary improvements (streets, etc.) were provided for.

The seller's action to cancel the contract was countered by the buyer's denial of breach and counterclaim for damages. It was the buyer's contention that its performance was excused by reason of the seller's failure to arrange for and effectuate improvements required by county ordinance for subdivisions within the County of Nye. Consequently, the controversy centered mainly upon whose obligation it was to pay for and construct improvements required by the subdivision ordinances of Nye County.

1. Since the contract did not provide for the sale to third parties of lots in a recorded subdivision, but only for the sale of 2½-acre parcels, it would seem that the contract itself denies

the buyer's contention that the parties really contemplated the sale of lots. This observation aside, the buyer's performance was not excused.

If we were to assume that evidence extraneous to the contract would establish the parties' intention to provide for the sale of subdivision lots in lieu of 2½-acre parcels, it is clear that a public zoning restriction in existence at the time of the making of the contract does not affect the rights and remedies otherwise available to the contracting parties.[1] Here, the seller did not agree to pay for and construct improvements required by the Nye County subdivision ordinances. [Cf. Kahle v. Kostiner, 85 Nev. 355, 455 P.2d 42 (1969), where the seller promised to make improvements and the buyer's performance was held to be excused.] In such circumstance, the obligation to comply with the ordinance rests with the buyer. Fritts v. Gerukos, 159 S.E.2d 536 (N.C. 1968).

In the instance before us, the buyer could have made sales of 2½-acre parcels as contemplated by the written contract since the subdivision ordinance had no application to sales of parcels of 2½ acres or more. On the other hand, if the contracting parties truly contemplated the sale of lots in a subdivision, the buyer could have done so upon complying with the requirements of the subdivision ordinance, which was its obligation. In either event, its performance of the contract was not excused.

2. Since the buyer's breach of the land sale contract is established and its failure to perform not excused, we need not consider other assigned errors.

Affirmed.

GUNDERSON, C. J., and BATJER, ZENOFF, and MOWBRAY, JJ., concur.

---

[1] See Annots., 175 A.L.R. 1055; 39 A.L.R.3d 362.