527 So.2d 624 (1988)
Joyce DEASON, et al.,
v.
Walter Del COX, et ux.
No. 57587.
Supreme Court of Mississippi.
April 27, 1988.
Rehearing Denied July 13, 1988.
J.S. Terry, Ward, Martin & Terry, Vicksburg, L.A. Pacific, Laurel, for appellants.
Landman Teller, Jr., Teller, Chaney & Rector, Vicksburg, Auvergne Williams, III, Harper, Bellan, McWhorter & Williams, Mary Ann Parks, Thompson, Alexander & Crews, Paul Snow, Paul Snow & Associates, Jackson, and William M. Bost, Jr., Ellis, Braddock, Bost & Robinson, Vicksburg, for appellees.
Before HAWKINS, P.J., and SULLIVAN and ZUCCARO, JJ.
ZUCCARO, Justice, for the Court:
This appeal arises from a complaint filed by Walter Cox, et ux. in the Chancery Court of Warren County, to remove a cloud from title to a certain parcel of real estate. From judgment in favor of Walter and Cecelia Cox (plaintiffs below), the numerous defendants below appeal.
The sole issue in this appeal is whether a certain deed conveyed a remainder in a 1/2 mineral interest to the grantee or whether the deed excepted that remainder from the conveyance, so that the grantor retained it.
February 23, 1946, W.D. McBroom and his wife Eunice McBroom (McI) owned a certain tract land in Warren County in fee simple. On that date, McI conveyed that land to W.A. McBroom and his wife Jeanette McBroom (McII). Although one of the appellees claims in his brief that W.D. McBroom and W.A. McBroom were father *625 and son, the record discloses no family relationship between them. The deed from McI to McII, dated February 23, 1946, contained the following provision:
The Grantors herein reserve unto themselves, for a period of ten (10) years, an undivided one-half (1/2) interest in and to all of the oil, gas and other minerals, in, on and under the above described property, together with right of ingress for the full development and proper enjoyment of said rights. It is understood and agreed that, at the expiration of said ten (10) year period, the entire mineral interest in and to said property shall vest in the said Grantees herein.
On July 3, 1951, prior to the expiration of the ten-year period, the McII's conveyed the property to B.S. Kinnebrew and Edna Earl Kinnebrew, husband and wife. The McII to Kinnebrew deed contained the following exception, construction of which is at the heart of this dispute:
AND, LESS AND EXCEPT, that certain one-half undivided interest in and to all of the oil, gas and other minerals, in, on and under the hereinconveyed (sic) and described lands, which was reserved unto W.D. McBroom and Eunice McBroom for a period of ten (10) years, by deed dated the 23rd day of February, 1946, and recorded in Deed Book 254, page 58, of the Record of Deeds of Warren County, Mississippi, it being the intention of the undersigned grantors to reserve and retain unto themselves only their reversionary interest in said mineral interest.
The sole issue on appeal is the effect of that exception in the deed from the McII's to the Kinnebrews. What was excepted from the conveyance?
Did the deed from McII to the Kinnebrews except
1) only the estate for years which the McI's had retained in the 1/2 mineral interest, with the result being that the remainder in that 1/2 mineral interest was conveyed to the Kinnebrews; or
2) the entire 1/2 mineral interest, with the result being that, at the end of the 10-year term, the McII's would own that 1/2 mineral interest in fee simple.
It is undisputed that the "other" 1/2 mineral interest, i.e., the half not subject to the estate for years, was conveyed to the Kinnebrews. The issue is, what happened to the 1/2 mineral interest which was subject to the estate for years. As stated above, at the end of the 10-year term, did the McII's own that 1/2 mineral interest, or had they conveyed it to the Kinnebrews.
Although there are numerous parties involved in this dispute, they all  whether heirs, devisees, grantees or lessees  trace their interest to either the McII's or the Kinnebrews. For the sake of clarity we refer to all those claiming through the McII's as the McII heirs and assigns, and to all those claiming through the Kinnebrews as the Kinnebrew heirs and assigns.
The McII heirs and assigns claim that the exception should be construed as follows. The exception clause not only excepted from the conveyance the estate of years which McI owned in the 1/2 mineral interest, but also excepted McII's "reversionary interest" in that 1/2 mineral interest. Thus, at the end of the 10-year period, McII owned the 1/2 mineral interest in fee simple. One of the major problems in this claim is immediately apparent: McII did not have a reversionary interest. The effect of the deed from McI to McII was that McII had a remainder, i.e., McII would own the 1/2 mineral interest in fee at the end of the 10-year term.
If McII were in fact the son of, and therefore an heir presumptive of, McI (one of the briefs argues that such is the case, although the record does not so indicate), then McII might have inherited the estate for years if McI had died before the expiration of the 10-year period. Perhaps this possibility is what is referred to as "their reversionary interest." Such an argument is pure speculation, without basis in the record.
Another problem exists in the construction argued by the McII heirs and assigns. The exception covers "that certain one-half (1/2) undivided interest in and to all the oil, gas and other minerals, in, on and under *626 the herein conveyed and described lands, which was reserved unto [McI] for a period of ten (10) years [by a certain deed.]" The Kinnebrew heirs and assigns claim that the underlined words are words of limitation, the effect of which is that only the 10-year estate for years is excepted from the deed. The McII heirs and assigns argue that the underlined words are merely descriptive  that the entire 1/2 interest is excepted, and the reference to the estate for years is for the purpose of designating which of the 1/2 interests is excepted; in other words, if the 1/2 interest excepted were not described as the one which was reserved to McI for ten (10) years, then it would be unclear which 1/2 mineral interest was referred to  the one subjected to the term of years or the "other" 1/2 mineral interest.
The Chancellor concluded that the exception was ambiguous and that it should therefore be construed against the grantor, McII. The Chancellor therefore entered judgment in favor of the Kinnebrew heirs and assigns, holding that the attempted "reservation" was ineffectual and that the cloud on the title of the Kinnebrew heirs and assigns should be cancelled.
From that judgment the McII heirs and assigns appeal, claiming seven (7) errors.

I. DID THE TRIAL COURT ERR IN ITS INTERPRETATION OF THE LEGAL EFFECT OF THE WORDS "REVERSIONARY INTEREST," FOLLOWING THE EXPRESSED INTENTION OF THE GRANTOR?
The McII heirs and assigns seem to argue that the Chancellor ignored the language expressing McII's intent to reserve and retain their reversionary interest. The argument appears to be as follows. The phrase "their reversionary interest" must refer to something; therefore, it refers to the only interest McII had, a remainder in the 1/2 mineral interest. The language must refer to some interest owned by McII, and that the only interest which McII owned was the remainder in the 1/2 mineral interest. The McII heirs and assigns, however, ignore an important fact: McII did not own a reversionary interest; therefore, this reference to an interest which McII did not own would appear to create an ambiguity, which  according to the familiar rule  must be construed against the grantor, McII.

II. DID THE TRIAL COURT ERR IN HOLDING THAT "APT WORDS" WERE NOT USED TO CLEARLY CREATE A RESERVATION OF AN UNDIVIDED ONE-HALF MINERAL INTEREST SUBJECT TO THE TERM OF THE 10-YEAR ESTATE?
The McII heirs and assigns cite Miss. Code Ann. § 89-1-5 (1972), which provides, in part, that "the words deemed necessary by the common law to transfer an estate of inheritance" are no longer necessary to create a fee simple. That statute, designed to eliminate the common-law requirement of "magic words" to convey an estate in fee simple absolute, is simply inapplicable. It certainly does not alter the principle that reservations or exceptions expressed in doubtful or ambiguous language are, as a general rule, construed most strongly against the grantor and in favor of the grantee. 26 C.J.S. Deeds § 140(2).

III. DID THE TRIAL COURT ERR IN HOLDING THAT THE EXCEPTION WAS AMBIGUOUS AND SHOULD THEREFORE BE CONSTRUED MOST STRONGLY AGAINST THE GRANTOR?
The McII heirs and assigns simply cite cases where this Court has held that rules of construction cannot be invoked where there is no ambiguity. Gaston v. Mitchell, 192 Miss. 452, 4 So.2d 892 (1941). Those cases are inapplicable precisely because the July 3, 1951 deed is ambiguous.

IV. DID THE CHANCELLOR ERR IN GIVING WEIGHT TO COX V. KINNEBREW, 465 SO.2D 344?
The Coxes, immediate grantees of the Kinnebrews, had sued the Kinnebrews and an attorney for defrauding them regarding the state of the title. The lower court in that case apparently concluded that there could be no fraud because the deed from McII to Kinnebrews was ambiguous. This Court affirmed per curiam. Cox, et ux. v. *627 Kinnebrew, et al., 465 So.2d 344 (Miss. 1985). The McII heirs and assigns now claim that the trial court in the instant case erred in relying on that affirmance, since different parties are involved in the instant dispute.
The argument fails because the trial court simply noted the other decision and its affirmance. There is absolutely no indication that the trial court gave weight to that decision in determining whether there was an ambiguity. The record shows just the opposite, i.e., that the Chancellor very painstakingly examined the exception word by word and then reached the conclusion that the exception was ambiguous.

V. ARE THE WORDS "WHICH WAS RESERVED UNTO [McI] FOR A PERIOD OF TEN YEARS ..." DESCRIPTIVE AND NOT RESTRICTIVE?
The McII heirs and assigns claim that this language was simply used to designate which 1/2 mineral interest was being excepted in its entirety; i.e., the language was used to indicate the 1/2 mineral interest in fee simple which was subject to the estate for years, rather than the other 1/2 mineral interest. Although this construction is plausible, it is not obvious that this meaning was intended. In other words, the language of the exception is ambiguous.

VI. NO PARTICULAR WORDS OR EXPRESSION IS NEEDED TO CREATE A REMAINDER; THE WORDS NEED ONLY EXPRESS THE TRUE INTENT OF THE GRANTOR.
Here, the McII heirs and assigns claim that the terms reversion and remainder are interchangeable, and that the McII reference to a reversionary interest when they owned a remainder therefore did not create an ambiguity. The reference to "their reversionary interest" may have been intended as a reference to the McII remainder, since a remainder is in fact what they owned. It is not clear, however, that such was intended. Therefore, the exception is ambiguous.

VII. THE FOUR CORNERS OF THE DEED EVIDENCE THE INTENTION OF McII TO KEEP UNTO THEMSELVES AN UNDIVIDED 1/2 MINERAL INTEREST IN FEE SUBJECT TO THE ESTATE FOR YEARS.
Here, the McII heirs and assigns argue persuasively that two (2) other paragraphs in the deed limit the warranty by making it subject to a mineral lease and a seven (7) year timber deed, but that McII made no effort to retain unto themselves reversionary interests in those. Although this language is of help in construing the exception at issue, and although the argument is persuasive, that does not establish the meaning of the exception so clearly that no ambiguity remains.
In construing deeds or reservations therein, the instrument is to be considered as a whole, and the intent of the parties should be gathered from its language. Lackey v. Corley, 295 So.2d 762 (Miss. 1974). Where a conveyance is ambiguous, it is to be construed against the grantor. Brashier v. Toney, 514 So.2d 329 (Miss. 1987); Baker v. Columbia Gulf Transmission Co., 218 So.2d 39 (Miss. 1969).
The Chancellor was correct in finding the exception ambiguous and in construing it against the grantor.
Judgment in favor of the Kinnebrew heirs and assigns is affirmed.

CROSS-APPEAL
Two (2) appellees hold mineral leases from all the appellants and appellees. They ask that if judgment in favor of the Kinnebrew heirs and assigns is reversed, that the cancellation of the cross-appellants' leases from the McII heirs and assigns be reversed also. In other words, they ask that if the McII heirs and assigns are awarded title to the 1/2 mineral interest, then the McII heirs' and assigns' leases to these cross-appellants be re-instated.
The points raised in the cross-appeal are moot.
AFFIRMED.
*628 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
ROBERTSON and PRATHER, JJ., dissenting.
ROBERTSON, Justice, dissenting:

I.
With respect to my colleagues, I am of the view that the correct construction of the July 3, 1951, deed reserves to W.A. McBroom and Jeanette McBroom (collectively "McII") a future interest in a one-half (1/2) mineral interest (which, of course, McII did not get until February 23, 1956). For this reason, I would reverse and render.
I begin with the February 23, 1946, conveyance. On that date W.D. McBroom and his wife Eunice McBroom (collectively "McI") conveyed the lands in controversy to McII via an instrument containing the following provisions:
The Grantors herein reserve unto themselves, for a period of ten (10) years, an undivided one-half (1/2) interest in and to all of the oil, gas and other minerals, in, on and under the above described property, together with right of ingress for the full development and proper enjoyment of said rights. It is understood and agreed that, at the expiration of said ten (10) year period, the entire mineral interest in and to said property shall vest in the same Grantees herein.
I read that conveyance as providing that McI granted everything to McII with the sole exception of title to one-half (1/2) the minerals which would not pass until February 23, 1956. That one-half (1/2) mineral interest would pass to McII on February 23, 1956, without any further conveyance or other action by anyone. In other words, McII was on February 23, 1946, vested with a future interest in one-half (1/2) the minerals which he would not begin to enjoy until the expiration of the ten year period on February 23, 1956.
So far, so good.
On July 3, 1951, prior to the expiration of the ten-year period, the McII's conveyed the property to B.S. Kinnebrew and Edna Earl Kinnebrew, husband and wife. The McII to Kinnebrew deed contained the following exception, construction of which is at the heart of this dispute:
AND, LESS AND EXCEPT, that certain one-half undivided interest in and to all of the oil, gas and other minerals, in, on and under the herein conveyed (sic) and described lands, which was reserved unto W.D. McBroom and Eunice McBroom for a period of ten (10) years, by deed dated the 23rd day of February, 1946, and recorded in Deed Book 254, page 58, of the Record of Deeds of Warren County, Mississippi, it being the intention of the undersigned grantors to reserve and retain unto themselves only their reversionary interest in said mineral interest. [Emphasis supplied]
Use of the word "reversionary" may only be seen a mistake. There was/is no reversionary interest in the chain of title to which the word might refer. The interest identified in this exception to the warranty is a "future" interest. It is the only interest available upon which this exception may operate.
I will explain myself more fully.
On July 3, 1951, McII conveyed everything he had to Kinnebrew, with the sole exception of the one-half (1/2) mineral interest which was reserved by McI in the February 23, 1946, conveyance. The reference to the February 23, 1946, conveyance identifies the instrument creating the excepted interest. The exception language is sufficiently clear that the granting clause simply fails to operate on that one-half (1/2) interest. That one-half (1/2) interest, accordingly, stays exactly where it was, to-wit: in McI until February 23, 1956, and in McII after February 23, 1956.
If the "intention clause" had not been inserted, I don't think anyone would question this reading. In the intention clause, however, McII makes what may only be considered an inadvertent error. He refers to the interest reserved in the 2/23/46 conveyance as a "reversionary interest". In *629 truth and in law that interest was at that time in two parts: one being an estate for years vested in McI through 2/23/56 and the other being a future interest vested in McII but to ripen into enjoyment in McII only on 2/23/56. This error in labeling the interest reserved in the 2/23/46 conveyance, however, does not change the character of that interest.
I would construe this instrument according to the approach outlined in my concurring opinion in Thornhill v. System Fuels, Inc., 523 So.2d 983, 1003 (1988). Specifically, I would abandon the labels "ambiguous" and "unambiguous". See 1006-1007 of my Thornhill opinion.
Leaving that aside, and taking for a moment the traditional (and in my view mistaken) approach, I would still reverse and render. Even if you assume that the exception in the 7/3/51 conveyance to Kinnebrew is ambiguous and if you further assume that the ambiguity must then be construed against the grantor, McII still wins. This is because the rules of construction do not allow that the words be given a construction they won't bear. Just because you construe the language against McII does not automatically mean that McII loses. Courts are still limited to constructions the words will bear. If here there are none that favor the grantee, the grantor McII still wins.
PRATHER, J., joins in this opinion.