608 So.2d 1141 (1992)
Edna C. SEYMOUR
v.
Larry EVANS, Gina Evans, Jerry W. Coleman, Bonnie Ann Coleman, Dudley S. Cruse and Lori J. Cruse.
No. 89-CA-0504.
Supreme Court of Mississippi.
June 3, 1992.
Rehearing Denied December 3, 1992.
Charliene Roemer, Charles Pringle, Biloxi, for appellant.
Dempsey M. Levi, Levi & Denham, Ocean Springs, for appellees.
Before DAN M. LEE, P.J., and ROBERTSON and McRAE, JJ.
McRAE, Justice, for the court:
This is an appeal from a judgment of the Chancery Court of Jackson County, dated March 30, 1989. Appellees are purchasers of real property who, after accepting deeds and obligating themselves to pay, discover-Med that zoning ordinances prevented them from using the property as they had intended. The chancellor set aside the deeds, finding that they violated the seller's implied warranties. He further ordered the return of the appellees' purchase payments and awarded consequential damages and attorney's fees to the appellees. On appeal, the seller assigns several issues for review. We shall address two:
I. THE CHANCELLOR ERRED IN FINDING THAT THE SELLER VIOLATED HER IMPLIED WARRANTIES BY CONVEYING LAND IN A MANNER WHICH VIOLATED COUNTY SUBDIVISION REGULATIONS.
II. THE CHANCELLOR ERRED BY AWARDING DAMAGES AND ATTORNEY'S FEES TO THE BUYERS.
We reverse and render on grounds that the deeds by which the appellees obtained their properties were valid and did not give rise to a breach of implied covenants.

*1142 FACTS AND PROCEEDINGS
The events leading up to this appeal began when appellant Edna C. Seymour decided to sell part of the land she owned in Jackson County, Mississippi. On August 22, 1983, she conveyed by warranty deed a three-acre parcel to John M. and Katherine McDonnell ("the McDonnells"). The McDonnells executed a promissory note and deed of trust in favor of Seymour for the deferred portion of the purchase price. On September 13, 1983, the McDonnells conveyed by warranty deed this same three-acre tract to Jerry W. and Bonnie Ann Coleman ("the Colemans"). The Colemans assumed the McDonnells' indebtedness to Seymour.
Two couples, Larry and Gina Evans ("the Evans") and Dudley and Lori Cruse ("the Cruses"), expressed an interest in purchasing another tract containing five and one half acres which Seymour offered for sale. They requested that the property be divided equally and conveyed to them separately. Accordingly, Seymour executed two warranty deeds on April 20, 1984. One conveyed to the Evans a parcel of land containing about 2.75 acres; the other conveyed to the Cruses a parcel of equal size. Seymour also conveyed to each couple an easement across her unsold property for purposes of ingress and egress. The Evans and the Cruses executed promissory notes and deeds of trust in favor of Seymour.
The Colemans, the Evans, and the Cruses all intended to use their newly-conveyed properties for residential purposes. The land was unimproved, so, after receiving their deeds, the grantees cleared the property of underbrush and began to make improvements thereon.
On May 14, 1986, about two years later, the Cruses filed an application with the Jackson County Planning Department for a permit to locate a mobile home on their tract. Roger Clark, then Assistant Director of the Jackson County Planning Department, told them that a permit could not be issued because the division of April 20, 1984 violated the Jackson County subdivision ordinances. As Clark explained it, the property could be brought into compliance only by procuring plat approval and by paving a road for ingress and egress. The Cruses informed the Evans of their difficulties, and both couples contacted Seymour. Seymour said there was nothing she could do.
The appellees subsequently met on several occasions with officials of the Jackson County Planning Department and the Planning Commission. At each meeting, they were told that no permits could be issued until the properties were brought into compliance with the subdivision regulations. The appellees also approached Jackson County Supervisor Tommy Brodnax. Brodnax also advised them that the subdivision regulations would have to be satisfied before permits would issue. Finally, appellees appeared informally before the Jackson County Board of Supervisors. They received the same advice there. The Colemans and the Evans took the various county officials at their word and never filed for permits. The parties agree that Seymour was unaware of the subdivision regulations at the time when she conveyed the subject properties.
On April 13, 1988, the appellees filed a complaint in chancery court against Seymour, John Phillips and Associates (Seymour's realtor), Century 21-K Realty (the Evans' and the Cruses' realtor), the McDonnells, and Jackson County. The two real estate agencies were subsequently dismissed as part of a negotiated settlement. The county was dismissed with prejudice on March 3, 1989. The chancellor entered judgment against Seymour and the McDonnells on March 30, 1989. The decree set aside the warranty deed from Seymour to the Evans, the warranty deed from Seymour to the Cruses, and the warranty deed from the McDonnells to the Colemans. The decree also required Seymour to reimburse the Evans and the Cruses for all payments made on the property together with their down payments, taxes, surveyors fees, forestry fees, loss of wages, closing costs, and attorney's fees.

*1143 LAW

I. DID SEYMOUR VIOLATE THE COMMON LAW SELLER'S WARRANTIES BY CONVEYING LAND IN A MANNER WHICH VIOLATED COUNTY SUBDIVISION REGULATIONS?
The Evans, the Cruses, and the Colemans each received their respective tracts by warranty deed. According to Miss. Code Ann. § 89-1-33:
The word "warrant" without restrictive words in a conveyance shall have the effect of embracing all of the five covenants known to common law, to wit: seisin, power to sell, freedom from encumbrance, quiet enjoyment and warranty of title.
The chancellor found that the conveyances by which appellees acquired their interests in the subject properties "violate[d] the common law covenants of warranty granted under section 89-1-33, especially power to sell." His Findings of Fact and Conclusions of Law does not disclose the analysis he employed in reaching this outcome.[1] In order to determine whether the chancellor correctly applied the law of implied warranties, we must therefore consider each covenant separately. Before doing so, however, we must first address a threshold question: Did the Seymour conveyances in fact violate the Jackson County subdivision ordinances, and if so, would the appellees have been unable to obtain variances? If the appellees could have obtained either permits or variances, then the basis for their complaint would have disappeared.

A. Were Appellees In Fact Unable to Obtain Permits or Variances?

Seymour argues that the subject conveyances do not fall within the scope of the ordinance. Thus, she maintains, the county should have granted the requested permits. Section 106.1 of the Jackson County subdivision ordinance provides in pertinent part:
These regulations and development standards shall apply to the following forms of land subdivisions:
a. The division of land into two or more tracts, lots, sites, or parcels, any part of which, when subdivided, shall contain less than three (3) acres in area.
According to Seymour, the Colemans' parcel does not fall within the scope of § 106.1 since the Colemans' parcel contained three  not less than three  acres. This argument ignores the clear language of § 106.1(a). Subsection (a) does not exclude all parcels not containing less than three acres; rather, the subsection excludes subdivisions which contain no parcels of less than three acres. The parcels conveyed to the Evans and the Cruses, along with other previous conveyances to which the record refers, all contain less than three acres. Since the Colemans' tract is part of the same division out of which the Evans and the Cruses acquired their respective interests, subsection (a) applies to the Colemans' parcel.
Seymour next argues that even if subsection (a) places her conveyances within the scope of the ordinance, § 106.1(f) takes them out. Subsection (f) provides:
The provisions of this ordinance shall not apply to a sale or conveyance of a parcel of land constituting a part of a larger unplatted tract where such conveyance is made by a metes and bounds description, and no dedication, vacation, or reservation of any public or private street or easement is made within such larger unplatted tract subsequent to the effective date of this ordinance.
The ordinance went into effect in 1970. It is unquestioned that the parcels conveyed to the appellees constitute parts of "a larger unplatted tract" retained by Seymour. *1144 It is also undisputed that the appellees have access to their tracts by way of an easement across the "larger unplatted tract." The only real issue, then, is whether the easement was created subsequent to 1970. If so, then the conveyances will not fall under the § 106.1(f) exception.
Seymour contends that the property contained within the easement was surveyed for the purpose of building a county road in 1966. The county, however, never acquired an interest in the property. All the relevant conveyances appearing in the record occurred subsequent to 1970. The chancellor did not err in finding that Seymour's conveyances to the appellees were governed by the Jackson County subdivision ordinances.
It is thus clear that Seymour's conveyances conflicted with the Jackson County subdivision ordinances. It is not clear, however, that the appellees would have been unable to obtain hardship variances if they had sought them. If they had obtained variances, then the whole controversy now before the Court would have evaporated. The chancellor apparently assumed that the county would not have granted a variance, but the record does not provide a solid foundation for this assumption. Various county officials testified that the planning commission rarely grants variances and that the appellees probably could not have obtained one, but such testimony amounts to little more than mere speculation. Speculative evidence, standing alone, is generally insufficient to support a chancellor's finding of fact. See Thompson v. Thompson, 278 So.2d 406, 408 (Miss. 1973). On the other hand, we hesitate to require parties like the appellees to fight a losing battle to the bitter end just to prove what is already a foregone conclusion. In Knight v. McCain, 531 So.2d 590, 597 (Miss. 1988), we considered an analogous case and concluded:
The [purchasers] did everything possible to secure a permit but actually apply; the only reason they did not actually apply for a permit was because they were told not to do so by the building permit office because it would not be issued. The law does not require the doing of a futile act.
Whether the chancellor in the instant case could reasonably have concluded that the appellees "did everything possible" is a close question. It is also a question that we need not decide. Even if the county had conclusively refused to grant the appellees building permits, the chancellor would still have erred in ruling that Seymour's conveyances violated the § 89-1-33 seller's warranties. In order to best explain our conclusion, we shall separately discuss each warranty as follows:

B. Covenants of Seisen and Power to Sell

First are the covenants of seisin and power to sell. The distinction between these two warranties is largely one of only historical significance.[2] As a practical matter, they are identical in content and scope. See 6A R. Powell, Real Property ¶ 900[2][b] (P. Rohan rev. ed. 1989); 7 G. Thompson, Real Property § 3178 at 242 (1962); see also Howard v. Clanton, 481 So.2d 272, 278 (Miss. 1985) (Robertson, J., dissenting) (citing authorities). The purpose of both is to provide assurance that the grantor has the estate he purports to convey. See Howard, 481 So.2d at 276; Bridges v. Heimburger, 360 So.2d 929, 930 (Miss. 1978). The record before us contains nothing to indicate that Seymour's estate in the property she conveyed was anything less than fee simple absolute. No third party has ever asserted a conflicting claim or interest. More to the point, the Jackson County subdivision regulations did not in any wise diminish Seymour's estate. Accordingly, they cannot be regarded as either a restriction on Seymour's power to sell or as a limitation on the estate with which Seymour was seised.
Appellees concede that Seymour's title was impeccable, but they insist that the conveyances nevertheless violated Seymour's warranty of power to sell because *1145 Seymour did not have the "power" to sell land in violation of the county subdivision ordinances. This novel argument must fail for two reasons. First, to define "power to sell" in such terms expands the scope of the warranty beyond its traditional focus on the estate of the grantor. Secondly, a deed which runs afoul of subdivision regulations is perfectly valid despite the violation. In Sienkiewicz v. Smith, 97 Wash.2d 711, 649 P.2d 112 (1982), a trial court ruled that an earnest money contract was unenforceable since the conveyance it secured would violate a subdivision platting statute. On appeal, the Supreme Court of Washington disagreed:
Although we have long held that generally an agreement violating a statute or municipal ordinance is void ... [citations omitted], this is not necessarily true where the agreement is neither immoral nor criminal in nature and the statute or ordinance subjects violators merely to a penalty without more... . [Citations omitted]. In Marriott [Financial Services, Inc. v. Capital Funds, Inc., 288 N.C. 122, 217 S.E.2d 551 (1975)], the North Carolina Supreme Court refused to grant rescission to a purchaser on the grounds that the vendor had not complied with a city platting ordinance. In so ruling, the court looked to the language and purpose of the statute and asserted that since the contract was neither immoral nor criminal, the penalty for violation is limited to the penalties expressly provided for in the statute. Rescission was not included among those penalties. Marriott, 288 N.C. at 128-29, 217 S.E.2d at 551... . [Citations omitted]. This sentiment is echoed is echoed in Gilmore v. Hershaw, 83 Wash.2d 701, 521 P.2d 934 (1974), wherein we refused to grant rescission for a violation of [a subdivision statute] on the grounds that the Legislature specifically provided remedies other than rescission for violation of that platting and subdivision statute.
Sienkiewicz, 649 P.2d at 115.
The holdings of the Washington and North Carolina courts appear to represent the majority view. See, e.g., Stauth v. Brown, 241 Kan. 1, 734 P.2d 1063 (1987); Montagna v. Marston, 24 Md. App. 354, 330 A.2d 502 (Ct.Spec.App. 1975); see also Annotation, Failure of Vendor to Comply with Statute or Ordinance Requiring Approval or Recording of Plat Prior to conveyance of Property as Rendering Sale Void or Voidable, 77 A.L.R.3d 1058 (1977). Further, the propositions set out in Sienkiewicz and Marriott harmonize with this Court's position on analogous points of law. In Rast v. Sorrell, 240 Miss. 333, 127 So.2d 435 (1961), the seller of a pool hall sued for damages after the buyer refused to go through with the contract. The buyer argued that the contract was void since the business had been operated in violation of a licensing statute. We held:
The contract here involved is not declared void and unenforceable by the statute. It is not a contract malum in se, it is a contract malum prohibitum, and the penalty, which is alone a criminal penalty, is imposed for the sole purpose of protecting the public revenue. There is no inherent infirmity or illegality in such a contract. The Legislature intended to rely alone on the penalty provided in the statute for the protection of the revenue of the state.
Rast, 127 So.2d at 437 (quoting Levinson v. Cox, 127 Miss. 250, 90 So. 1 (1908).
We addressed a similar matter in Gardner v. Reed, 207 Miss. 306, 42 So.2d 206 (1949). In Gardner, a buyer defended against the enforcement of a contract for the sale of fertilizer on grounds that the seller, a commercial fertilizer dealer, had not complied with statutory registration, inspection, and notice requirements. In holding for the buyer, we noted that "[t]he contract covered the purchase of a lawful commodity, and was not malum in se but merely malum prohibitum." The contract was deemed enforceable "since the contract ... was to cover the sale of a commodity, the sale of which is not prohibited by law, and there is no statutory provision declaring such a contact void and unenforceable for failure to comply with the provisions thereof, but makes such failure a criminal offense instead." Gardner, 42 So.2d at 208.
*1146 Rast and Gardner implicate that the conveyances from Seymour to appellees are valid and enforceable so long as the ordinances they are alleged to violate regulate actions which are merely malum in prohibitum. In Mississippi State Highway Commission v. Wagley, 231 So.2d 507 (Miss. 1970), we noted that the violation of a zoning restriction is malum prohibitum so long as the proscribed use does not involve "inherent evil." Id. at 509 (citing Nichols on Eminent Domain, Market Value § 12.322[1] (1962). There is nothing inherently evil about selling small tracts of land without platting them and without constructing paved streets for ingress and egress. Accordingly, Seymour's conveyances were not invalid even though they conflicted with Jackson County's subdivision ordinances. There is no question that Seymour had the "power" to sell the land as she did.

C. Covenant Against Encumbrances

Appellees additionally argue that Seymour breached her warranty of freedom from encumbrances by conveying the land in violation of the Jackson County subdivision regulations.
As a general rule, zoning and other public restrictions on the use of land do not in and of themselves constitute breaches of a covenant against encumbrances. See Powell on Real Property, ¶ 900[2]; Thompson on Real Property, § 5354; Annotation, Zoning or Other Public Restrictions on the Use of Property As Affecting Rights and Remedies of Parties to Contract for the Sale Thereof, 39 A.L.R.3d 362 (1971); see also Dover Pool & Racquet Club, Inc. v. Brooking, 366 Mass. 629, 322 N.E.2d 168, 169 (1975) ("In general building and zoning laws in existence at the time a land contract is signed are not treated as encumbrances"); Laand Corp. v. Firsching, 91 Nev. 271, 534 P.2d 916, 918 (Nev. 1975) (existing subdivision ordinance does not constitute encumbrance); Pamerqua Realty Corp. v. Dollar Service Corp., 93 App. Div.2d 249, 250, 461 N.Y.S.2d 393, 395 (1983) (purchaser is deemed to have entered contract subject to laws and ordinances). This is true even though the regulation renders one's title unmarketable. See Thompson on Real Property § 5354 n. 22. Professor Powell cogently explains the state of the law:
Encumbrances can usually be classified as one of three types: (1) servitudes, (2) ... liens or charges on the land, and (3) present or future estates which may be carved out of the estate conveyed.
A servitude generally affects the land or its use and enjoyment in some physical way. It reduces the value of the land because a purchaser will not pay as much for a parcel of land which is limited in its usage as he or she would for an unencumbered one. Thus, easements ... and covenants ... are encumbrances....
However, the existence of a zoning ordinance which limits the use of the land, even though its effect may be substantially similar to that of a restrictive covenant, is not considered a violation of the covenant. The attitude of the courts seems to be that these restrictions are public regulations equally applicable to all land in the district and are equally open for the grantor and grantee to investigate. Therefore, the purchaser takes title with the risk that such a regulation may exist.
Powell on Real Property, ¶ 900[2].
The law becomes a bit murky where property is not merely subject to a zoning restriction but is actually in violation of the restriction at the time of conveyance. The jurisdictions are not in agreement, but a majority seems generally to regard an existing violation as a breach of the covenant against encumbrances. See Feit v. Danahue, 826 P.2d 407, 409 (Colo.Ct.App. 1992); Wilcox v. Pioneer Homes, Inc., 41 N.C. App. 140, 254 S.E.2d 214 (1979); Oatis v. Delcuze, 226 La. 751, 77 So.2d 28 (1954); Lohmeyer v. Bower, 170 Kan. 442, 227 P.2d 102 (1951); Moyer v. De Vincentis Constr. Co., 107 Pa.Super. 588, 164 A. 111 (1933). But see Barnett v. Decatur, 261 Ga. 205, 403 S.E.2d 46 (1991). Professor Powell explains:
[C]ourts will not presume that a purchaser intended to use land in violation of a *1147 regulation. This interpretation of the distinction is supported by the fact that where construction on, or use of, the premises at the time of the conveyance already violates a restriction, the purchaser may assume that it is permitted and a breach of the covenant will occur.
Powell, Real Property ¶ 900[2][c].[3]
The Seymour conveyances obviously do not fall within the scope of the general rule that existing violations breach the implied covenant against encumbrances: The purported violations were not "existing" at the time of the conveyance. Rather, the conveyances themselves gave rise to the violations. The purchaser is not entitled to assume that a violation is permissible where there has been no history of tacit assent. Cf. Powell, Real Property ¶ 900[2][c] (quoted, supra) (stating the converse).[4] We therefore find that the alleged violations of the Jackson County subdivision ordinances do not abridge Seymour's covenant against encumbrances.

D. Covenant of Quiet Enjoyment

The appellees further maintain that Seymour breached her warranty quiet enjoyment. According to Bridges v. Heimburger, 360 So.2d 929, 931 (Miss. 1978), the warranty of quiet enjoyment is breached where "there ha[s] been a judicial determination of loss of title or some other hostile action equivalent to eviction." The appellees claim that the county's refusal to grant permits was an action "equivalent to eviction."
The law does not precisely define the "equivalent" of eviction, but at least in the context of conveyance by warranty deed, it is clear that a grantee may claim constructive eviction only where his title suffers from an infirmity which endangers his right to possess the property. According to Powell, the covenant of quiet enjoyment "assures the grantee that his or her quiet possession or enjoyment will not be disrupted by the grantor or anyone else with paramount title." Powell on Real Property ¶ 900[2][e]. Cf. Bridges, 360 So.2d at 931 (covenant of quiet enjoyment not breached where grantee had good title and where grantee's "possession was never disturbed or even threatened"). In practical effect, therefore, this covenant operates "as the fraternal, if not identical, twin of the covenant of warranty." Powell on Real Property ¶ 900[2][e]. In the instant case, the record reveals no blemish on the appellees' *1148 title.[5] Further, the appellees have demonstrated no infringement upon their right to possess the tracts in question; they merely assert that the violations of the subdivision ordinance prevent them from using the properties in the manner they intended.[6] In the absence of an impediment to good title or the right to possession, there can be no breach of the covenant of quiet enjoyment.
We hold that Seymour did not breach the warranties implied in her deeds to the appellees by conveying the subject properties in contravention to county subdivision ordinances.

III. WHETHER THE CHANCELLOR ERRED IN GRANTING DAMAGES AND ATTORNEY'S FEES TO THE APPELLEES?
The chancellor based his award of damages and fees on his finding that Seymour had breached her implied warranties by selling property in violation of the Jackson County subdivision ordinances. Having held that the Seymour's conveyances violated no warranties, we reverse the award of damages and attorney's fees.

CONCLUSION
The record does not clearly and conclusively indicate that the appellees could not have obtained the permits or variances they needed in order to use their properties in the manner they intended. We find, however, that even if the county had officially denied the appellees both permits and variances, the denials would not have given rise to breaches of Seymour's implied warranties. The covenants of seisen, power to sell, title, and quiet enjoyment all require some infringement on title or the right to possess. No such infringement occurred here. The violation of a subdivision ordinance breaches a covenant against encumbrances only where the violation already exists at the time of conveyance. The violation at issue here did not preexist the conveyance.
Given the facts contained in the record, we hold that the ability of the appellees to obtain permits or variances does not affect Seymour's implied warranties. Further, the award of damages and attorney's fees to the appellees was erroneous.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
NOTES
[1] The appellees, along with the court below, place much emphasis on Knight v. McCain, 531 So.2d 590 (Miss. 1988). In Knight, the Court affirmed a chancellor's order rescinding a deed where the grantees were unable to obtain a building permit. Knight is clearly distinguishable from the case sub judice, however, since the Court in Knight did not analyze the question in terms of implied covenants. Instead, the chancellor rescinded the deed on grounds that the grantor had failed to carry out his promise to refund the grantees' purchase money in the event that they were unable to obtain a permit. Seymour entered no such contract and made no such promise.
[2] For a good discussion of the historical development and eventual blending of the covenants of seisin and power to sell, see 6A R. Powell, Real Property ¶ 900[2] (P. Rohan rev. ed. 1989).
[3] The Powell rationale is, of course, inapplicable where the violation is not apparent. If the purchaser cannot discern the violation, then he cannot logically "assume" that the nonconformity is permitted. Many courts have therefore recognized an exception to the general rule where latent violations exist. See, e.g., Frimberger v. Anzellotti, 25 Conn. App. 401, 594 A.2d 1029 (1991); Fahmie v. Wulster, 81 N.J. 391, 408 A.2d 789 (1979); Domer v. Sleeper, 533 P.2d 9 (Alaska 1975); McCrae v. Giteles, 253 So.2d 260 (Fla. Dist. Ct. App. 1971); Silverblatt v. Livadas, 340 Mass. 474, 164 N.E.2d 875 (1960). Frimberger concludes that such an exception is justified since

a conceptual enlargement of the covenant against encumbrances [to include latent, existing violations of restrictive land use ordinances] would create uncertainty and confusion in the law of conveyancing and title insurance because neither a title search nor a physical examination of the premises would disclose the violation.
Frimberger, 594 A.2d at 1033; accord Feit, at 409-10; see also Comment, Public Land Use Regulations & Marketability of Title, 1958 Wis. L.Rev. 128.
A few courts have recognized a second exception to the general rule where an extant violation of a land use ordinance is easily remediable. See FFG, Inc. v. Jones, 6 Haw. App. 35, 708 P.2d 836 (Hawaii Ct.App. 1985) (zoning law violation which merely required the redesigning and repainting or parking lot on commercial property did not constitute encumbrance); see also Feit, at 410 (noting existence of exception). The rationale for this exception is that minor non-conformities do not substantially diminish the value of the property and thus do not qualify as encumbrances. See Jones, 708 P.2d at 48-49.
[4] The timing of noncompliance is another basis for distinguishing Knight v. McCain (see supra, note 1). The grantees in Knight were denied a building permit on grounds of a pre-existing violation  the lot they purchased did not have a central water supply system as required by a county ordinance. Unlike the alleged violation in the instant case, therefore, the violation in Knight was already in existence when the conveyance occurred.
[5] The appellees acknowledge that Seymour has not breached her warranty of title.
[6] The appellees cite no authority to support their proposition that a frustration of intended use amounts to a breach of the covenant of quiet enjoyment. Courts in other jurisdictions have regarded "constructive eviction" as included the legal inability to use a leasehold as one intended. See Park West Mgmt. Corp. v. Mitchell, 47 N.Y.2d 316, 418 N.Y.S.2d 310, 391 N.E.2d 1288 (1979) (covenant of quiet enjoyment includes a duty to refrain from act or omission which would render premises unusable by leasehold tenant); Polk v. Armstrong, 91 Nev. 557, 540 P.2d 96 (1975) (commercial tenant's inability to obtain operating license due to landlord's failure to bring premises into compliance with law amounted to constructive eviction). These cases as readily distinguishable from the instant case, however. First and most obviously, the case sub judice does not involve a leasehold. Seymour retained no control over the parcels she conveyed and assumed no responsibility for facilitating the appellees' use thereof. Secondly, unlike the litigants in Mitchell and Polk, the parties here entered no agreement contemplating the appellees' intended use of the properties. There is nothing in either the contracts of sale or the warranty deeds to indicate that the appellees intended to use the tracts for any particular purpose. Where the parties do not specify the purpose for which property is to be used, the grantor certainly cannot be viewed as having guaranteed the property's suitability for a particular use. Cf. Pursue Energy Corp. v. Perkins, 558 So.2d 349, 352 (Miss. 1990) (court must look to language of instrument when determining intent of parties to a conveyance); Deason v. Cox, 527 So.2d 624, 627 (Miss. 1988) (same).