ELIAS FAHMIE, JR., LILLIAN FAHMIE: ISLAND ROAD HOLD-
ING CO., A NEW JERSEY CORPORATION, AND FARMER'S
AUTO & EQUIPMENT EXCHANGE, INC., A NEW JERSEY
CORPORATION, PLAINTIFFS-APPELLANTS, v. K. ELIZA-
BETH WULSTER, MANUEL FREIRE AND BARBARA FREIRE,
DEFENDANTS-RESPONDENTS.

Argued September 25, 1979—Decided December 3, 1979.

*Mr. Dennis J. Drasco* argued the cause for appellants (*Messrs. Lum, Biunno & Tompkins,* attorneys; *Mr. Dennis J. Drasco,* of counsel and on the brief with *Mr. Gary O. Aidekman*).

*Mr. Richard K. Rosenberg* argued the cause for respondents (*Messrs. Rosenberg & Waldman,* attorneys).

The opinion of the court was delivered by

SULLIVAN, J.

The appeal herein by plaintiffs, on certification granted by this Court, 79 *N.J.* 486 (1979), involves basically the issue whether a covenant against encumbrances in a deed is breached when the grantor conveys real property on which is located a stream culvert inadequate in size and constructed in violation of state agency requirements. Plaintiffs, for the first time on appeal, also argued that the grantor's alleged failure to disclose this

known violation to the grantee constitutes actionable conceal-
ment.

In 1960, title to the property in question was in the name of
the Lilline Corporation, a family owned entity. The property,
located on the east side of Route 17 in Mahwah, was the site of
the family's auto body parts business. Masonicus Brook runs
along the westerly side of the tract adjacent to the easterly side
of Route 17. The property was, and still is, subject to slope and
drainage easements granted to the State of New Jersey in
regard to the brook.

In January 1960, the corporation, in order to provide for
improved access to its property from Route 17, retained an
engineering firm which submitted a letter and preliminary
drawings to the New Jersey Bureau of Water for the placing of
a culvert in the brook. The proposal contemplated the complete
enclosure of the brook in a pipe which was to be covered over
thereby providing the improved access desired. After receiving
the proposal, the Bureau, in a letter dated February 10, 1960 and
sent to the engineering firm, stated that the proposed nine-foot
diameter steel pipe culvert did not provide adequate capacity for
the stream in a flood stage and that a 16' × 5.5' culvert would
be required. Despite the Bureau's letter, a nine-foot diameter
pipe was installed and covered over.

At the time, the defendant K. Elizabeth Wulster was the
president of Lilline Corporation. The trial judge described her
as the "titular head" and found that she had no personal
knowledge of the installation.[1] Following the installation of the
culvert, the premises were conveyed to Mrs. Wulster by the
corporation by deed dated October 14, 1960.

---

[1] In her deposition Mrs. Wulster testified that her husband owned all of the
stock in Lilline Corporation and that he died intestate in 1958. She said that
in 1960 her son was the person who acted for the corporation in obtaining the
services of contractors, materialmen and the like, and "I knew nothing about
this work" or the February 10, 1960 letter from the New Jersey Bureau of
Water Control.

In September 1969, plaintiffs Fahmie offered to purchase both the auto parts business and the property from Mrs. Wulster. A purchase price having been agreed on, the Fahmies, who were represented by counsel, elected neither to enter into a contract, nor have a title search made prior to closing. In lieu thereof, at the closing held on October 1, 1969, the Fahmies insisted on, and received from Mrs. Wulster, a warranty deed which included a covenant that the grantees "shall have quiet possession of the said land free from all encumbrances" and a covenant of general warranty. The deed also recited that the conveyance was made subject to the slope and drainage easements relating to Masonicus Brook previously granted to the State of New Jersey.

In March 1973, plaintiffs entered into negotiations with Food Services Properties Corp. regarding the sale of the former Wulster property and an adjoining lot acquired by one of the plaintiffs from Manuel and Barbara Freire, for use as a Burger King restaurant. In conjunction with the transaction, plaintiffs and Food Services filed an application with the Department of Conservation and Economic Development, Division of Water Policy and Supply, for a stream encroachment in Masonicus Brook for the purpose of constructing a riprap and headwall in and along the brook. In response, the applicants were notified that the existing culvert pipe in the stream on plaintiffs' property was inadequate in size and would have to be replaced.

In August 1974, the application was finally granted after plaintiffs agreed to replace the existing pipe with a box culvert 20' × 8' in size.[2] Following installation, plaintiffs filed the instant suit seeking to collect the expense for the new culvert from Mrs. Wulster on the ground that her conveyance of the property to plaintiffs on which was located the old steel pipe, installed in violation of Bureau of Water Control requirements,

---

[2]Plaintiffs offered to install a 16' × 5.5' culvert as required by the February 10, 1960 letter of the Bureau of Water Control but the Division insisted on a substantially larger culvert.

constituted a violation of the general warranty covenant in the deed that she would warrant and forever defend the title of the lands against any and all persons claiming the same or any part thereof.[3] (At trial plaintiffs also relied on the covenant against encumbrances contained in the deed.)

Following extensive discovery, the parties submitted the issue of liability to the court on a stipulation that the original nine-foot diameter pipe had been installed in 1960 after receipt of the letter from the Bureau of Water Control that a 16′ × 5.5′ culvert was required. The court ruled that Mrs. Wulster's 1969 conveyance of the property with the nonconforming pipe did not constitute a breach of either the covenant of general warranty, or the covenant against encumbrances. Judgment was entered in favor of Mrs. Wulster.

On appeal, plaintiffs asserted not only the breach of covenants issue, but also for the first time argued that Mrs. Wulster's failure to disclose the existence of the nonconforming pipe constituted actionable concealment. The Appellate Division found no breach of covenants substantially for the reasons given by the trial judge. As to the claim of actionable concealment, the court noted that this issue was not pleaded or tried below, but was satisfied by its review of the record that there was no merit to the claim.

In their appeal to this Court, plaintiffs have abandoned their original reliance on the covenant of general warranty and now argue only that the existence of the nonconforming culvert on the property, when Mrs. Wulster conveyed it to plaintiffs, resulted in a breach of the covenant against encumbrances. We do not agree.

---

[3]The suit in a separate count also joined Manuel and Barbara Freire as defendants, alleging that they had conveyed the adjoining lot to one of the plaintiffs with knowledge of the Wulster violation. On motion, the Freires were granted summary judgment and they are no longer involved in the case.

*N.J.S.A.* 46:4–5 provides in pertinent part that when a grantor in a deed covenants that the land is free from all encumbrances,

* * * such words shall have as much effect as if the words "and that the said premises are free and clear, and freely and clearly acquitted and discharged of and from all former mortgages, judgments, executions, and of and from all other encumbrances whatsoever [were used]."

In this State the term "encumbrance" as used in the covenant has been· interpreted to mean an infringement on the title. In *Gaier v. Berkow,* 90 *N.J.Super.* 377, 379 (App.Div.1966) it is stated that a breach of such covenant is shown "when the proofs establish that a third person has a right to or an interest in the land conveyed, to the diminution of the value of the land, though consistent with the passing of the fee by the deed of conveyance." See *Demars v. Koehler,* 62 *N.J.L.* 203, 204 (E. & A. 1898).

It has been held that a breach of the covenant can involve physical conditions concerning the property such as a building encroachment. *Genetelli v. Percudani,* 142 *N.J.Eq.* 735 (E. & A. 1948). However, this concept has not been extended to the condition of a structure on the property which is in violation of some governmental law or regulation.

In *Gaier,* plaintiffs had purchased property from defendants with an existing structure on it. After the purchase plaintiffs were required to make repairs and alterations to the building to bring it in compliance with the Tenement House Act. Suit was then brought against the defendants for the expenses incurred in correcting the housing violations charging that such violations were a breach of the covenant against encumbrances. The Appellate Division held that the violations, not being a lien, easement or right of a third person to an interest in the property, did not constitute an encumbrance on the property within the meaning of the covenant. It concluded that a claim

for breach of a covenant against encumbrances cannot be predicated on the necessity of repair or alteration to conform to the provisions of the Tenement House Act. This principle is generally the law throughout the country. *McCrae v. Giteles,* 253 *So.* 2d 260 (Fla.Dist.Ct.App.1971); *Silverblatt v. Livadas,* 340 *Mass.* 474, 164 *N.E.2d* 875 (Sup.Jud.Ct.1960); see *Stone v. Sexsmith,* 28 *Wash.2d* 947, 184 *P.2d* 567 (Sup.Ct.1947).

Plaintiffs urge that the concept of encumbrance should be expanded to include structural conditions in the property conveyed which constitute violations of law or governmental regulations. *Brunke v. Pharo,* 3 *Wis.2d* 628, 89 *N.W.2d* 221 (Sup.Ct. 1958) is cited in support of this proposition. However, in that case the conveyance was made after violations of the building code had been found and official action begun to compel compliance. In those special circumstances, the Wisconsin Supreme Court found that the violations of the building code constituted an encumbrance.

The present situation is different and, in any event, we are not inclined to follow the Wisconsin approach. To expand the concept of encumbrance as urged by plaintiffs would create uncertainty and confusion in the law of conveyancing and title insurance. A title search would not have disclosed the violation, nor would a physical examination of the premises. The better way to deal with violations of governmental regulations, their nature and scope being as pervasive as they are, is by contract provision which can give the purchaser full protection in a situation such as is here presented.

It is also argued that the record establishes actionable concealment on the part of Mrs. Wulster and that plaintiffs should be entitled to recover damages on this ground. The Appellate Division noted that this issue was not pleaded in plaintiffs'

complaint or tried below, and, we add, the trial court made no ruling thereon. We decline, therefore, to consider the question.

Affirmed.

*For affirmance*—Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal*—None.