MARTIN FRIMBERGER *v.* DOLINKA ANZELLOTTI
(9087)

NORCOTT, LAVERY and LANDAU, Js.

Submitted on briefs January 7—decision released August 6, 1991

*Duane Totten,* for the appellant (defendant).

*Richard Paladino,* for the appellee (plaintiff).

LAVERY, J. The defendant appeals from the judgment of the trial court awarding the plaintiff damages for breach of the warranty against encumbrances and innocent misrepresentation of real property that the defendant conveyed to the plaintiff by warranty deed.

The defendant claims that the court was incorrect (1) in finding that she had misrepresented the property and that the plaintiff had relied on that misrepresentation to his detriment, (2) in finding that she breached the warranty deed covenant against encumbrances, and (3) in awarding damages for diminution of value to the property caused by a wetlands violation as well as damages for costs of correcting that violation. We agree with the defendant and reverse the decision of the trial court.

The record and memorandum of decision disclose the following facts. In 1978, the defendant's brother and predecessor in title, Paul DiLoreto, subdivided a parcel of land located in Old Saybrook for the purpose of constructing residences on each of the two resulting parcels. The property abuts a tidal marshland and is, therefore, subject to the provisions of General Statutes § 22a-28 et seq.

DiLoreto built a bulkhead and filled that portion of the subject parcel immediately adjacent to the wet-

lands area, and then proceeded with the construction of a dwelling on the property. On February 21, 1984, DiLoreto transferred the subject property to the defendant by quit claim deed. On December 31, 1985, the defendant conveyed the property to the plaintiff by warranty deed, free and clear of all encumbrances but subject to all building, building line and zoning restrictions as well as easements and restrictions of record.

During the summer of 1986, the plaintiff decided to perform repairs on the bulkhead and the filled area of the property. The plaintiff engaged an engineering firm which wrote to the state department of environmental protection (DEP) requesting a survey of the tidal wetlands on the property. On March 14, 1986, working with the plaintiff's engineers, the DEP placed stakes on the wetlands boundary and noted that there was a tidal wetlands violation on the property. In a letter to the plaintiff dated April 10, 1986, the DEP confirmed its findings and indicated that in order to establish the tidal wetlands boundary, as staked for regulatory purposes, the plaintiff must provide DEP with an A-2 survey of the property. At some point after April, 1986, and before March, 1988, the plaintiff engaged a second group of engineers who met with DEP officials and completed an A-2 survey.

On March 28, 1988, members of the DEP water resources unit met with the plaintiff's new engineers to stake out the wetlands boundary again. On April 13, 1988, as confirmation of that meeting, Denis Cunningham, the assistant director of the DEP water resources unit, wrote to the plaintiff to advise him that the filled and bulkheaded portion of the property, and possibly the northwest corner of the house were encroaching on the tidal wetlands boundary, thereby creating a violation of General Statutes § 22a-30. This letter suggested that to correct the violation, the plaintiff would

have to submit an application to DEP demonstrating the necessity of maintaining the bulkhead and fill within the tidal wetlands. Instead of filing the application, the plaintiff filed the underlying lawsuit against the defendant, claiming damages for breach of the warranty against encumbrances and innocent misrepresentation.

The trial court determined that the area had been filled without obtaining the necessary permits required under General Statutes § 22a-32.[1] The court found that

[1] General Statutes § 22a-32 provides: "REGULATED ACTIVITY PERMIT. APPLICATION. HEARING. WAIVER OF HEARING. No regulated activity shall be conducted upon any wetland without a permit. Any person proposing to conduct or cause to be conducted a regulated activity upon any wetland shall file an application for a permit with the commission, in such form and with such information as the commissioner may prescribe. Such application shall include a detailed description of the proposed work and a map showing the area of wetland directly affected, with the location of the proposed work thereon, together with the names of the owners of record of adjacent land and known claimants of water rights in or adjacent to the wetland of whom the applicant has notice. The commissioner shall cause a copy of such application to be mailed to the chief administrative officer in the town or towns where the proposed work, or any part thereof, is located, and the chairman of the conservation commission and shellfish commission of the town or towns where the proposed work, or any part thereof, is located. No sooner than thirty days and not later than sixty days of the receipt of such application, the commissioner or his duly designated hearing officer shall hold a public hearing on such application, provided, whenever the commissioner determines that the regulated activity for which a permit is sought is not likely to have a significant impact on the wetland, he may waive the requirement for public hearing after publishing notice, in a newspaper having general circulation in each town wherever the proposed work or any part thereof is located, of his intent to waive said requirement, except that the commissioner shall hold a hearing on such application upon receipt of a petition, signed by at least twenty-five persons, requesting such a hearing. The following shall be notified of the hearing by mail not less than fifteen days prior to the date set for the hearing: All of those persons and agencies who are entitled to receive a copy of such application in accordance with the terms hereof and all owners of record of adjacent land and known claimants to water rights in or adjacent to the wetland of whom the applicant has notice. The commissioner shall cause notice of such hearing to be published at least once not more than thirty days and not fewer than ten days before the date set for the hearing in the newspaper having a general circulation in each town where the proposed work,

the defendant had breached the warranty against encumbrances and had innocently misrepresented the condition of the property by allowing the plaintiff to purchase the property in reliance on the defendant's warranty against encumbrances. The court awarded the plaintiff damages and costs in the amount of $47,792.60, a figure that included the costs to correct the wetlands violation as well as the diminution of value of the property caused by the wetlands violation. The defendant brought the present appeal.[2]

This appeal turns on a determination of whether an alleged latent violation of a land use statute or regulation, existing on the land at the time title is conveyed, constitutes an encumbrance such that the conveyance breaches the grantor's covenant against encumbrances. An encumbrance is defined as "every right to or interest in the land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance." H. Tiffany, Real Property (1975) § 1002; *Aczas* v. *Stuart Heights, Inc.*, 154 Conn. 54, 60, 221 A.2d 589 (1966). All encumbrances may be classed as either (1) a pecuniary charge against the premises, such as mortgages, judgment liens, tax liens, or assessments, or (2) estates or interests in the property less than the fee, like leases, life estates or dower rights, or (3) easements or servitudes on the land, such as rights of way, restrictive covenants and profits. H. Tiffany, supra, §§ 1003–1007. It is important to note that the covenant against encumbrances operates in praesenti and cannot be breached unless the encumbrance existed at the time of the conveyance. Id.

---

or any part thereof, is located. All applications and maps and documents relating thereto shall be open for public inspection at the office of the commissioner. At such hearing any person or persons may appear and be heard."

[2] The trial court issued certain injunctive relief in connection with the plaintiff's claim of trespass. The defendant has not challenged that portion of the judgment.

The issue of whether a latent violation of a restrictive land use statute or ordinance, that exists at the time the fee is conveyed, constitutes a breach of the warranty deed covenant against encumbrances has not been decided in Connecticut. There is, however, persuasive and authoritative weight in the legal literature and the case law of other jurisdictions to support the proposition that such an exercise of police power by the state *does not* affect the marketability of title and should not rise to the level of an encumbrance. See, e.g., *Domer* v. *Sleeper,* 533 P.2d 9 (Alaska 1975) (latent building code violation not an encumbrance); *McCrae* v. *Giteles,* 253 So. 2d 260, 261 (Fla. App. 1971) (violation of housing code noticed and known by vendor not an encumbrance); *Monti* v. *Tangora,* 99 Ill. App. 3d 575, 425 N.E.2d 597 (1981) (noticed building code violations not an encumbrance); *Silverblatt* v. *Livadas,* 340 Mass. 474, 164 N.E.2d 875 (1960) (contingent or inchoate lien which might result from building code violation not an encumbrance); *Fahmie* v. *Wulster,* 81 N.J. 391, 408 A.2d 789 (1979) (discussed infra); *Woodenbury* v. *Spier,* 122 App. Div. 396, 106 N.Y.S. 817 (1907) (a lis pendens filed to enforce housing code violations after conveyance not an encumbrance); *Stone* v. *Sexsmith,* 28 Wash. 2d 947, 184 P.2d 567 (1947).

Of the cases cited from other jurisdictions, *Fahmie* v. *Wulster,* supra, provides the closest factual analogue to the case before us. In *Fahmie,* a closely held corporation that originally owned certain property requested permission from the New Jersey bureau of water to place a nine foot diameter culvert on the property to enclose a stream. The bureau required instead that a sixteen and one-half foot diameter culvert should be installed. The corporation went ahead with its plan and installed the nine foot culvert.

The property was later conveyed to Wulster, the titular president of the corporation, who had no knowl-

edge of the installation of the nine foot culvert. Nine years after the installation of the culvert, Wulster conveyed the property, by warranty deed, to Fahmie.

In anticipation of the subsequent resale of the property, Fahmie made application to the New Jersey economic development commission, division of water policy and supply, to make additional improvements to the stream and its banks. It was then that the inadequate nine foot culvert was discovered, and the plaintiff was required to replace it with a sixteen and one-half foot diameter pipe. Fahmie sued Wulster for the cost to correct the violation claiming a breach of the deed warranty against encumbrances.

The New Jersey Supreme Court concluded that it was generally the law throughout the country that a claim for breach of a covenant against encumbrances cannot be predicated on the necessity to repair or alter the property to conform with land use regulations. By so doing, the *Fahmie* court refused to expand the concept of an encumbrance to include structural conditions existing on the property that constitute violations of statute or governmental regulation. The court concluded that such a conceptual enlargement of the covenant against encumbrances would create uncertainty and confusion in the law of conveyancing and title insurance because neither a title search nor a physical examination of the premises would disclose the violation. The New Jersey court went on to state that "[t]he better way to deal with violations of governmental regulations, their nature and scope being as pervasive as they are, is by contract provisions which can give the purchaser full protection [in such situations]." Id., 397.

The case before us raises the same issues as those raised in *Fahmie*. Here, the court found that in 1978 the wetlands area was filled without a permit and in violation of state statute. The alleged violation was

unknown to the defendant, was not on the land records and was discovered only after the plaintiff attempted to get permission to perform additional improvements to the wetlands area.

Although the DEP first advised the plaintiff of the alleged violation in 1986, it did not bring any action to compel compliance with the statute. Rather, it suggested that the violation may be corrected by submitting an application to DEP. As of the date of trial, the plaintiff had not made such an application, there had been no further action taken by the DEP to compel compliance, and no administrative order was ever entered from which the plaintiff could appeal. Thus, the plaintiff was never required by DEP to abate the violation or restore the wetlands.

Our Supreme Court has stated that for a deed to be free of all encumbrances there must be marketable title that can be sold "at a fair price to a reasonable purchaser or mortgaged to a person of reasonable prudence as a security for the loan of money." *Perkins* v. *August,* 109 Conn. 452, 456, 146 A. 831 (1929). To render a title unmarketable, the defect must present a real and substantial probability of litigation or loss at the time of the conveyance. *Frank Towers Corporation* v. *Laviana,* 140 Conn. 45, 53, 97 A.2d 567 (1953). Latent violations of state or municipal land use regulations that do not appear on the land records, that are unknown to the seller of the property, as to which the agency charged with enforcement has taken no official action to compel compliance at the time the deed was executed, and that have not ripened into an interest that can be recorded on the land records do not constitute an encumbrance for the purpose of the deed warranty. *Monti* v. *Tangora,* supra, 581–82. Although, under the statute, DEP could impose fines or restrict the use of the property until it is brought into compliance, such

a restriction is not an encumbrance. *Silverblatt* v. *Livadas,* supra, 479; *Gaier* v. *Berkow,* 90 N.J. Super. 377, 379, 217 A.2d 642 (1966).

Because the plaintiff never actually filed the application, any damages that he may have suffered were speculative. The court based its assessment of damages on a *proposed* application and the anticipated costs of complying with that *proposed* application. The fact that the alleged violation was first noted by DEP only after the plaintiff made requests to rework the bulkhead and filled area, leads us to the conclusion that no litigation or loss was imminent. This position is confirmed by the fact that, as of the date of trial, no order was entered by DEP to compel the plaintiff to rectify the violative condition and no application was made by the plaintiff to gain approval of existing conditions.

We adopt the reasoning of *Fahmie* v. *Wulster,* supra, and hold that the concept of encumbrances cannot be expanded to include latent conditions on property that are in violation of statutes or government regulations. To do so would create uncertainty in the law of conveyances, title searches and title insurance. The parties to a conveyance of real property can adequately protect themselves from such conditions by including protective language in the contract and by insisting on appropriate provisions in the deed. As the Illinois Appellate Court held in *Monti* v. *Tangora,* supra, 582, "[t]he problem created by the existence of code violations is not one to be resolved by the courts, but is one that can be handled quite easily by the draftsmen of contracts for sale and of deeds. All that is required of the law on this point is that it be certain. Once certainty is achieved, parties and their draftsmen may place rights and obligations where they will. It is the stability in real estate transactions that is of paramount importance here."

The plaintiff in this case is an attorney and land developer who had developed waterfront property and was aware of the wetlands requirement. He could have protected himself from any liability for wetlands violation either by requiring an A-2 survey prior to closing or by inserting provisions in the contract and deed to indemnify himself against potential tidal wetlands violations or violations of other environmental statutes.

We disagree as well with the court's finding of innocent misrepresentation. The elements of innocent misrepresentation are (1) a representation of material fact (2) made for the purpose of inducing the purchase, (3) the representation is untrue, and (4) there is justifiable reliance by the plaintiff on the representation by the defendant and (5) damages. *Johnson* v. *Healy,* 176 Conn. 97, 405 A.2d 54 (1978). From the evidence adduced at trial, *no* representation was made relating to the wetlands area. The court relied exclusively on the warranty against encumbrances as the "assertion" that the property was free and clear of all encumbrances as the material fact misrepresented. Because we have held that the warranty of a covenant against encumbrances was not violated, no misrepresentation was made.

The judgment is reversed as to the award of damages for breach of the warranty against encumbrances and for innocent misrepresentation of real property, and the case is remanded with direction to render judgment in favor of the defendant on those issues.[3]

In this opinion the other judges concurred.

---

[3] The award of injunctive relief for trespass was not challenged on appeal and the judgment on that issue is left undisturbed.