[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was tried to the court on September 6, 14, 20, and 21, 2001. Thereafter, the parties submitted post-trial briefs, the last of which was filed on November 5, 2001. After considering the evidence and the arguments of the parties, the court issues this decision.
 I. PROCEDURAL BACKGROUND
The plaintiffs, John and Pauline Schlindrer, commenced this action by a four count complaint, dated June 22, 1998. The first three counts, as to defendants George P. Manson and Patricia Zajac, were not the subject of the trial. As to them, the complaint was withdrawn on December 22, 2000 (#133). The remaining, fourth count alleges professional malpractice against the defendant Michael F. Dowley, an attorney. On September 5, 2001, pursuant to Dowley's motion, to which the plaintiffs had no objection, the court ordered bifurcation of the trial as to the issues of liability and damages. Accordingly, the trial concerned only the question of liability as to the fourth count of the complaint.
In the fourth count, the plaintiffs allege that they engaged Dowley's services as an attorney in connection with their purchase of certain real property, known as 78 Shore Road, in East Haddam, Connecticut (the premises). They allege that Dowley was engaged to examine title to the premises and to ascertain "if the title was good and if conveyance to the Plaintiffs would vest in them good and marketable title to the real estate, free and clear of all encumbrances." (See complaint, fourth count, ¶ 3.) They also allege that Dowley undertook a title examination and advised the plaintiffs that a conveyance of the premises by the owners (Manson and Zajac) to the plaintiffs would vest them with good title. (See complaint, fourth count, ¶ 4.) The plaintiffs further allege that, relying upon that advice, they purchased the premises, for the sum of one hundred seventy two thousand dollars CT Page 15941-d ($172,000.00). (See complaint, fourth count, ¶ 5.)
The plaintiffs claim that the conveyance "did not vest good title in the Plaintiffs in that prior to the conveyance the real property was encumbered by zoning regulations limiting and restricting the use of said premises to less than year round use and occupancy." (See complaint, fourth count, ¶ 6.) They assert that, "[a]s a result of the Defendant's negligent and unskillful examination of the title and his subsequent advice, the Plaintiffs purchased the premises at a price in excess of its value." (See complaint, fourth count, ¶ 7.)
Dowley filed an answer to the complaint, dated October 27, 1998 (#112). Therein, he admits that the plaintiffs engaged his services as an attorney in connection with the purchase of the premises. Paragraphs 6 and 7 of the fourth count of the complaint, cited above, concerning the plaintiffs' allegations that they did not receive good title and that Dowley's conduct amounted to negligence, are denied in his answer. (See answer to fourth count, ¶¶ 6-7.) In addition, Dowley pleaded special defenses, in which he claims that the plaintiffs' claims are time-barred by General Statutes §§ 52-584b and 52-577.
At trial, the court heard witnesses presented by the plaintiffs, including plaintiff Pauline Schlindrer, two officials from the Town of East Haddam, and Terrence Lomme, an attorney. The defendant, Michael F. Dowley, testified for the defense, as did Michael Wells, also an attorney. In addition, the parties submitted documentary evidence.
 II. FACTS
The court finds the following facts and credits the following evidence, except as noted. Dowley was not consulted by the Schlindrers until after they had agreed to purchase the premises. The Schlindrers retained him to represent them in connection with their purchase of the premises prior to August 23, 1988.[1] Previously, before retaining Dowley, by real estate sales agreement, dated June 25, 1988, they had agreed to purchase the premises for the above-referenced sum of $172,000.00. (See Exhibit B.)
Paragraph 9 of the agreement specifies that the sellers agree to provide the buyers with a warranty deed, "subject only to the provisions of any ordinance, municipal regulations, public or private law, restrictions and easements as appear of record, if any, provided they do not affect the marketability of title. . . ." Regarding encumbrances, paragraph 11 thereof provides that "[n]othing shall be considered an CT Page 15941-e encumbrance which is not so considered by the STANDARDS OF TITLE OF THE CONNECTICUT BAR ASSOCIATION." By the time Dowley was retained, the contingency periods specified in the agreement concerning inspections had expired. (See Exhibit B, Addendum.)
Although Mrs. Schlindrer testified at trial that she and her husband wanted to purchase the premises for eventual use as a year-round retirement home, there is no evidence that this intention or plan was ever communicated to Dowley or to anyone in his office prior to the closing. The purchase and sale of the premises closed on August 23, 1998. An attorney from Dowley's office represented the Schlindrers at the closing. Mrs. Schlindrer and Dowley had never met before the trial.
At the closing, in accordance with the real estate sales agreement (Exhibit B), the Schlindrers received a warranty deed from the sellers. (See Exhibit 1.) There is no question that their agreement with the sellers did not call for the sellers to provide a certificate of title or title insurance policy. (See Exhibit B, ¶ 11.) The warranty deed (Exhibit 1) states that the sellers designated therein as the Grantors) covenant that they own the premises conveyed and that "the same are free from all incumbrances whatsoever, except as herein stated." No encumbrances are listed.
Exhibit 3 contains a reconciliation which shows the sum of $150.00 for title charges by Dowley. The same sum is reflected on Dowley's bill, dated August 23, 1988, Exhibit 4, for "[e]xamination of East Haddam Land Records." Exhibit J, Dowley's file concerning the transaction, contains a certificate of title from Attorney Richard S. Johnston, dated August 8, 1988. This certified that record title to the premises, in fee simple, was vested in Manson and Jajac, free and clear of any and all recorded and properly indexed encumbrances, with certain exceptions, including "[a]ny and all provisions of any ordinance, municipal or other governmental regulation or public or private law." (See Certificate of Title, part of Exhibit J, ¶ 1.) This certificate also contained a note which specified that the title had been brought down to August 24, 1988, at 3:58 p.m., the day after the closing, when the deed to the Schlindrers (Exhibit 1) was recorded.
Zoning records located in the East Haddam zoning office concerning the premises reflect that the premises is zoned as a seasonal dwelling, meaning that it cannot be lived in year round. Exhibit 7, a copy of a letter to Manson, from the Town's Planning and Zoning Commission, dated August 28, 1983, states this fact. Exhibit 8, a copy of a zoning permit issued to Manson, dated September 12, 1983, also notes the seasonal CT Page 15941-f dwelling status. James F. Ventres, the land use administrator for the Town, testified that the zoning office is located next to the Town Clerk's office.
In May, 1997, the Town's Land Use Department notified the Schlindrers, by letter (Exhibit 2), that, although the premises were listed as a seasonal structure, they were utilizing it as a year round dwelling. This action ensued. Other facts are set forth below by the court in the context of its discussion of the issues.
 III. DISCUSSION
The Schlindrers contend that the primary issue of consideration for the court is whether the facts "support under Connecticut law a duty from Dowley to have somehow disclosed the seasonal classification of this property to the Plaintiffs in the course of his obligation to search the title and deliver his opinion thereon to his clients." (See plaintiffs' post-trial memorandum of law, p. 4.) As noted above, in paragraph 6 of their complaint, fourth count, they allege that the conveyance did not vest them with good title since "the real property was encumbered by zoning regulations limiting and restricting the use of said premises to less than year round use and occupancy." In response, the defendant contends that the evidence does not support a cause of action against Dowley for failure to review the zoning records to determine whether a use limitation was in place concerning the premises and for failure to communicate that the title search conducted did not address zoning issues. (See defendant's post-trial brief, p. 4.)
"As a general rule, a plaintiff cannot prevail in a malpractice action in Connecticut unless he presents expert testimony to establish the standard of proper professional skill or care." Paul v. Gordon,58 Conn. App. 724, 727, 754 A.2d 851 (2000). An exception to this general rule exists where the conduct at issue amounts to "such an obvious and gross want of care and skill" that the negligence is clear, even to a lay person. (Internal quotation marks omitted.) Id. The plaintiffs do not contend that their claims fall within the exception. They acknowledge that expert testimony is required. (See plaintiff's reply memorandum of law, p. 1.) "The requirement of expert testimony in malpractice cases serves to assist lay people, such as members of the jury and the residing judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard." (Citations omitted.)Davis v. Margolis, 215 Conn. 408, 416, 576 A.2d 489 (1990).
As the trier of fact, the court must evaluate the expert testimony CT Page 15941-g which is presented. "[I]t is well established that the evaluation of a witness' testimony and credibility are wholly within the province of the trier of fact." Szczerkowski v. Karmelowicz, 60 Conn. App. 429, 434,759 A.2d 1050 (2000).
Michael Wells, a local attorney, testified as an expert witness for the defense. He has experience, for approximately twenty years, in representing clients in real estate transactions and in conducting and reviewing title searches, including many in the various towns in Middlesex County, such as East Haddam.
In preparation for his testimony, Wells reviewed Dowley's file concerning the transaction at issue (Exhibit J), including the title work contained in it. He did his own title run down concerning the premises. He also reviewed materials from the Towns's zoning files, which were provided to him by defense counsel; as well as the Marketable Record Title Act, General Statutes § 47-33b, et. seq.; and the Standards of Title of the Connecticut Bar Association (CBA), which are referenced in the agreement (Exhibit B). It is undisputed that the Standards of Title prescribed by the CBA are deemed authoritative by real estate practitioners in Connecticut. The Standards of Title in effect at the time of the transaction were presented as Exhibit L.
Wells credibly explained that the purpose of a title search is to ensure that a client is receiving marketable title, as prescribed by the Marketable Record Title Act, meaning an unbroken chain of title for forty or more years, and by the Standards of Title. The statute, as in effect in 1988, defines "marketable record title" as meaning "a title of record which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section47-33e. . . ." General Statutes § 47-33b (a). General Statutes § 47-33b (e) sets forth the forty year standard. SeeLunn v. Cummings Lockwood, 56 Conn. App. 363, 373,743 A.2d 653 (2000).
Wells also explained that certain circumstances may lead a title searcher to look outside the land records, such as instances of foreclosure or bankruptcy, which were not present in the chain of title in question. There was nothing in the chain of title at issue which required a search of records beyond those which were recorded on the Town's land records.
The court also credits Wells' testimony, in which he stated that the standard of care for an attorney does not necessarily require, as part of CT Page 15941-h a title search, for the title searcher to check the zoning records. He explained that, under the statute and the Standards of Title, zoning records are not title defects, unless they rise to the level of a zoning violation, which is recorded on the land records and which constitutes an encumbrance. Wells' own title run down concerning the premises revealed that no such notice of violation was recorded concerning the premises.
Wells' explanation of the concept of marketable title is supported by our Appellate Court's holding in Frimberger v. Anzellotti,25 Conn. App. 401, 594 A.2d 1029 (1991). There, the court, citing earlier decisions of our Supreme Court, stated, "that for a deed to be free of all encumbrances there must be marketable title that can be sold at a fair price to a reasonable purchaser or mortgaged to a person of reasonable prudence as a security for the loan of money. . . . To render a title unmarketable, the defect must present a real and substantial probability of litigation or loss at the time of the conveyance. . . . Latent violations of state or municipal land use regulations that do not appear on the land records, that are unknown to the seller of the property, as to which the agency charged with enforcement has taken no official action to compel compliance at the time the deed was executed, and that have not ripened into an interest that can be recorded on the land records do not constitute an encumbrance for the purpose of the deed warranty." (Internal quotation marks and citations omitted.) Id., 408. In addition, the court held "that the concept of encumbrances cannot be expanded to include latent conditions on property that are in violation of statutes or government regulations. To do so would create uncertainty in the law of conveyances, title searches and title insurance. The parties to a conveyance of real property can adequately protect themselves from such conditions by including protective language in the contract and by insisting on appropriate provisions in the deed." Id., 409.
In addition, Wells testified that it is not his general practice to provide clients with a certificate of title after the completion of a title search. If a client wants such a certificate, an extra charge is billed for it, as an additional service.
As noted, the plaintiffs presented Lomme as an expert witness to support their claim that Dowley's conduct amounted to violations of the standard of care required of an attorney engaged in a transaction of this type. In his first position as a practicing attorney, in the early 1980's, Lomme was employed for two years by the attorney who represents the plaintiffs in this matter, Scott Jezek, at the firm of Sprecher and Jezek. In addition, he is married to Attorney Jezek's sister-in-law.
In preparation for his testimony, Lomme performed a title search CT Page 15941-i concerning the premises. As part of that search, he checked the zoning file, and read exhibits 7 and 8, discussed above. He testified that he checked the zoning file because the land records reflected the recording of a variance and because, when a property, such as the premises, is located around a lake, he always checks the zoning file. However, he acknowledged that when he conducted his title search he knew already that the premises were zoned as a seasonal dwelling, from his previous representation of the sellers. Thus, he did not learn of the seasonal status from conducting a title search of a property with which he was previously unfamiliar.
He also stated that it is standard procedure for an attorney examining title, as the buyer's counsel, in a transaction of this type, to check the zoning file. In his opinion, if an attorney representing a buyer did not examine the zoning file, that constituted a violation of the standard of care. According to his testimony, in 1988, the year in which the subject transaction occurred, the standard procedure with respect to communicating an opinion of title was to issue a title insurance policy. Also, he stated that it was a violation of the standard of care not to communicate to a client the results of the attorney's title examination.
In view of Wells' persuasive testimony, the court was unpersuaded by the testimony presented by Lomme concerning the standard of care. The weight of his testimony was diminished also by his history of association with and connection to plaintiff's counsel, and by his prior familiarity with the property in question.
The plaintiffs acknowledge that no Connecticut case authority supports their position. See plaintiffs' post-trial memorandum of law, p. 8. Instead, they cite to a passage in Burke, Connecticut Real Property Law, Section 30.d., which states "[s]ince even title insurance policies except governmental laws and regulations, such as zoning laws, it is important for the purchaser's attorney to determine if the property being conveyed is or will violate any law or regulation." This passage is not inconsistent with the case authority quoted above. See Frimberger v.Anzelotti, supra. As stated there, an attorney should look to the land records to ascertain whether a zoning authority has cited the property for a violation.
The plaintiffs also cite General Statutes § 52-584b[2] for the proposition that an attorney's liability is not limited to the question of marketable title. (See plaintiffs' post-trial memorandum of law, p. 9.) Section 52-584b does not address the standard of care applicable to a real estate transaction or to title searches, certificates, or opinions. Rather it sets forth the limitations periods after which no action may be CT Page 15941-j commenced in connection with "the preparation of and the execution and delivery of an attorney's title certificate or opinion, or the title search in connection therewith. . . ."[3]
In addition, as Wells explained, the fact that a zoning variance had been previously granted to the sellers for the purpose of constructing a deck did not require a check of the zoning records, since it did not affect the marketability of title. As he noted, a variance permits an owner to use his property for a particular purpose. "A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . ." (Internal quotation marks omitted.)Reid v. Zoning Board of Appeals, 235 Conn. 850, 857, 670 A.2d 1271
(1996).
As Wells testified, the title search done here by Dowley's office comported with the standard of care for an attorney. Nothing required a check of the zoning records. After all, Dowley and his office were not informed of the plaintiffs' plan for year round occupation of the premises.[4]
In their post-trial memorandum of law, at pp. 2-3, the plaintiffs state that, at closing, they did not receive any title report, written or otherwise, policy of title insurance, or other advice regarding the title search." They also assert that subsequent correspondence from Dowley's office did not provide a title report or policy of title insurance. (See plaintiff's post-trial memorandum of law, p. 3.) In particular, they refer to Exhibit 5, a post-closing letter from Dowley's office, dated October 7, 1988, which enclosed a "[c]opy of the Warranty Deed which contains the restrictions placed on the property." They claim that the warranty deed which they received from the sellers (Exhibit 1) did not contain any restrictions, which they contend is "indicative of the lack of due care attendant to this conveyance." (See plaintiffs' post-trial memorandum of law, pp. 5-6.) As Dowley explained, the reference in Exhibit 5 to a deed with restrictions was to a previous deed, not that which was conveyed to the plaintiffs. He further explained that the restrictions in the previous deed had expired. Accordingly, the deed provided to the plaintiffs did not contain these restrictions.
Here, the title work for which they were charged enabled their attorney to ascertain that the Schlindrers were getting what their real estate sales agreement (Exhibit B) required, good title. The plaintiffs have not proved that Dowley had an obligation to provide anything more in relation to the title search. CT Page 15941-k
In summary, the plaintiffs have not proved that Dowley's representation of them failed to meet the applicable standard of care in any respect.
 CONCLUSION
For the foregoing reasons, judgment may enter in favor of the defendant, Michael F. Dowley and against the plaintiffs, John and Pauline Schlindrer. It is so ordered.
BY THE COURT
ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT