2015 UT App 182

## THE UTAH COURT OF APPEALS

FAVERO FARMS, LC,
Appellee,
*v.*
H. DAN BAUGH AND TAMI S. BAUGH,
Appellants.

Opinion
No. 20140711-CA
Filed July 30, 2015

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 120905218

Robin K. Nalder, Attorney for Appellants

Jonathan R. Grover, Attorney for Appellee

JUDGE JAMES Z. DAVIS authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

DAVIS, Judge:

¶1      H. Dan Baugh and Tami S. Baugh appeal the trial court's
ruling in favor of Favero Farms, LC (Favero) on Favero's claims
for breach of contract, breach of the covenant against
encumbrances, and breach of the covenant of good faith and fair
dealing in connection with the Baughs' sale of real property to
Favero. We affirm.


BACKGROUND

¶2      The Baughs owned twenty acres of land in Weber
County, Utah. In 2004, they met with a wetlands consultant who
informed them that there were wetlands on their property and
that they therefore could not use fill dirt on the property without
obtaining a permit from the United States Army Corps of

Engineers. The Baughs had already placed some fill dirt on the property before meeting with the wetlands consultant, and they placed additional fill dirt on the property after meeting with him. The Baughs never obtained a permit for any of the fill dirt.

¶3 In 2005, a representative of the Army Corps of Engineers inspected the property, advised the Baughs that the fill dirt violated wetlands regulations, and instructed them to remove the fill dirt and to install a silt fence against the wetlands. The Baughs did not comply with these instructions.

¶4 In August 2009, the Baughs sold the property to Favero. The parties entered into a real estate purchase contract (the REPC), which required the Baughs to disclose "conditions known to [the Baughs] relating to environmental problems and building or zoning code violations." Favero had the right to object to the disclosures or cancel the contract if it did not acquiesce to what was revealed by the disclosures. The REPC also provided that the property would be delivered to Favero "in a generally accepted agricultural condition." The REPC contained an abrogation clause indicating that certain enumerated provisions, including a provision pertaining to attorney fees and the provision requiring that the property be delivered "in a generally accepted agricultural condition," would survive closing but that the remaining provisions of the REPC, including those related to disclosures, would not. The Baughs never delivered any disclosures to Favero and never informed Favero of the existence of the wetlands or the wetlands violation.

¶5 At closing, the parties signed a document titled "Escrow Instructions," which indicated that "[a]ny warrants made between the seller and the buyer in the original purchase agreement which are not specifically deleted in the final settlement documents shall survive closing and shall be binding upon seller and buyer." The Escrow Instructions further represented, "Buyer has completed its due diligence on the subject property, including, but not limited to inspections and

tests performed thereon. Buyer is comfortable and accepts the results of said inspections and tests and states, warrants and stipulates that the property is accepted by the same in its present condition." The parties also signed an Owner/Borrower Statement, in which the Baughs represented that "no work has been done and no materials have been furnished on or incident to the referenced property and there are no outstanding claims or persons entitled to any claim." The Baughs then conveyed the property via warranty deed.

¶6     After the sale, Favero discovered the wetlands violation and learned that it could not use the property for agricultural purposes "without extensive work and repairs" and that it would need to restore or relocate the wetlands in order to comply with federal requirements. Favero sued the Baughs for breach of contract, breach of the covenants in the warranty deed, breach of the covenant of good faith and fair dealing, negligence, and fraudulent misrepresentation. Following a bench trial, the trial court dismissed Favero's negligence and fraudulent misrepresentation claims but granted judgment in favor of Favero on its other three claims.

¶7     In ruling on Favero's breach-of-contract claim, the court ruled that the REPC imposed on the Baughs a duty to disclose the condition of the property and to deliver the property in generally accepted agricultural condition and that the Baughs violated these duties. Further, the court held that the Baughs breached the Owner/Borrower Statement, which represented that "no work has been done and no materials have been furnished on or incident to the referenced property," because the Baughs had, in fact, "leveled the property, brought in fill dirt, and failed to tell [Favero] about the wetlands or wetlands violation." The court determined that Favero could not waive an objection to a nondisclosure it was not aware of and, accordingly, rejected the Baughs' argument that Favero had waived the nondisclosure by failing to file a written objection.

¶8    The court next ruled that the Baughs had breached the warranty deed's covenant against encumbrances because the wetlands violation would require Favero "to restore the wetlands or relocate the wetlands to comply with Federal requirements." The court found that the "Federal requirements represent an encumbrance on the property and a breach of the warranty conveyed in the warranty deed."

¶9    Finally, the court ruled that the Baughs had breached the implied covenant of good faith and fair dealing by failing to disclose the existence of the wetlands to Favero prior to the sale of the property.

¶10    The court awarded damages in the amount of $200,000 based on testimony that it would "cost between $197,850 and $287,850 to restore or mitigate the damages to the wetland property." The court also ordered that the Baughs pay Favero's attorney fees in the amount of $32,853.63. This award was based on the provisions of the REPC. The Baughs appeal the trial court's rulings.

ISSUES AND STANDARDS OF REVIEW

¶11    First, the Baughs argue that Favero's representation in the Escrow Instructions that it accepted the property "'in its present condition'" amounted to an as-is acceptance of the property and waived any warranties made in the REPC, specifically, that the property would be delivered in "generally accepted agricultural condition."[1] "The interpretation of a contract is a question of law,

---

1. The Baughs also challenge the trial court's determination that they breached the contract by failing to disclose the existence of the wetlands as required by the REPC, asserting that Favero waived any objection to the Baughs' failure to disclose the wetlands when it neglected to deliver a written objection to the Baughs' nondisclosure. We agree that the trial court erred in

(continued…)

which we review for correctness, giving no deference to the ruling of the district court." *Meadow Valley Contractors, Inc. v. Utah Dep't of Transp.*, 2011 UT 35, ¶ 13, 266 P.3d 671 (citation and internal quotation marks omitted).

¶12 The Baughs further argue that the trial court erred in determining that their failure to disclose the wetlands violation constituted a breach of the warranty deed's covenant against encumbrances. We review the trial court's interpretation of a deed for correctness. *Keith v. Mountain Resorts Dev., LLC*, 2014 UT 32, ¶ 17, 337 P.3d 213.

¶13 Finally, the Baughs challenge the trial court's determination that they breached the implied covenant of good

---

(…continued)

determining that the failure to disclose was a breach of contract, but for different reasons. The Baughs' contractual duty to disclose under the REPC was abrogated once the warranty deed was delivered. *See supra* ¶ 4; *see also Mason v. Loveless*, 2001 UT App 145, ¶ 14, 24 P.3d 997 ("Under the merger doctrine, the terms of the underlying contract for the sale of land are merged into the deed and thereby become extinguished and unenforceable upon delivery and acceptance of the deed." (citation and internal quotation marks omitted)). While Favero might have sought redress for the Baughs' failure to disclose in the context of a claim for fraudulent nondisclosure, *see Hermansen v. Tasulis*, 2002 UT 52, ¶ 25, 48 P.3d 235 ("[S]ellers of real property owe a duty to disclose material known defects that cannot be discovered by a reasonable inspection by an ordinary prudent buyer."), the Baughs' *contractual* duty to disclose expired at closing. Nevertheless, because we ultimately affirm the trial court's determination that the Baughs breached the REPC by failing to deliver the property in generally accepted agricultural condition, *see infra* ¶ 16, the trial court's error on this alternative breach-of-contract ground does not affect the outcome of this appeal.

faith and fair dealing by failing to disclose the wetlands violation. "[W]hether there has been a breach of good faith and fair dealing is a factual issue, and [w]e review questions of fact under the clearly erroneous standard." *Iota, LLC v. Davco Mgmt. Co.*, 2012 UT App 218, ¶ 14, 284 P.3d 681 (alterations in original) (citations and internal quotation marks omitted).

## ANALYSIS

### I. Breach of Contract

¶14   The Baughs argue that the language in the Escrow Instructions indicating that Favero "states, warrants and stipulates" that it accepted the property "in its present condition" abrogates their contractual duty in the REPC to deliver the property in "generally accepted agricultural condition."[2] However, the Escrow Instructions also provide, "Any warrants made between the seller and the buyer in the original purchase agreement which are not specifically deleted in the final settlement documents shall survive closing and shall be binding upon seller and buyer." One such "warrant" was that the Baughs would deliver the property in "generally accepted agricultural condition."

---

2. The Baughs assert that the REPC expired before closing and that they refused to sell the property to Favero after the expiration of the REPC unless Favero was willing to accept the property as is. According to the Baughs, the language in the Escrow Instructions in which Favero accepted the property "in its present condition" was intended to abrogate any duty the Baughs had to provide disclosures or to deliver the property in any particular condition. This assertion is inconsistent with the plain language of the Escrow Instructions, and we therefore decline to consider it further.

¶15    When interpreting a contract, the entire contract "should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions." *Lee v. Barnes*, 1999 UT App 126, ¶ 11, 977 P.2d 550 (citation and internal quotation marks omitted). Were we to interpret the Escrow Instructions as the Baughs urge, then the provision indicating that warranties made in the REPC remain in force unless specifically deleted would be rendered meaningless. *See Munford v. Lee Servicing Co.*, 2000 UT App 108, ¶ 18, 999 P.2d 23 ("Provisions which are apparently conflicting are to be reconciled and harmonized, if possible, by reasonable interpretation so that the entire agreement can be given effect." (citation and internal quotation marks omitted)).

¶16    Furthermore, read in context, Favero's acceptance of the property in its present condition is an acceptance of any flaws that were or could have been revealed in the course of conducting due diligence on the property rather than an unconditional as-is acceptance of the property. The relevant provision reads in full, "Buyer has completed its due diligence on the subject property, including, but not limited to inspections and tests performed thereon. Buyer is comfortable and accepts the results of said inspections and tests and states, warrants and stipulates that the property is accepted by the same in its present condition." Because the Escrow Instructions indicated that warrants made in the REPC would survive closing if not specifically deleted, the "generally accepted agricultural condition" promised by the Baughs was part of the "present condition" in which Favero believed it was accepting the property. Thus, the trial court did not err[3] in concluding that the

_____

3. The trial court also determined that the Baughs breached the Owner/Borrower Statement by representing that "'no work has been done and no materials have been furnished on or incident to the referenced property'" when they admittedly "leveled the property, brought in fill dirt, and failed to tell [Favero] about the wetlands or wetlands violation." Although we ultimately agree with the trial court that the wetlands violation constitutes an

(continued…)

Baughs breached the REPC and the Escrow Instructions by failing to deliver the property in generally accepted agricultural condition.[4]

---

(…continued)

encumbrance, *see infra* ¶ 22, we are not necessarily convinced that it is the type of encumbrance contemplated by the Owner/Borrower Statement. The Owner/Borrower Statement appears to contemplate a situation in which lienable work has been performed on the property. The relationship between the Baughs' work to fill and level the property and the ultimate wetlands violation seems to us to be different from the relationship between a contractor performing work and the contractor's entitlement to payment for that work. Furthermore, the trial court's specific focus on the language, "no work has been done and no materials have been furnished on or incident to the referenced property," as opposed to the language, "there are no outstanding claims or persons entitled to any claim," seems to suggest that the trial court found objectionable the Baughs' simple failure to inform Favero about work they had performed on the property, regardless of the relationship the work had to an actual claim on the property. On the whole, the court's determination that the Baughs breached the Owner/Borrower Statement, which appears to pertain specifically to mechanics' liens, seems a bit of a stretch. However, we need not resolve the question of whether the trial court erred in determining that the Baughs breached the Owner/Borrower Statement, because we nevertheless uphold the trial court's ruling on Favero's breach-of-contract claim on the ground that the Baughs breached the REPC and the Escrow Instructions.

4. The Baughs do not challenge the trial court's finding "that the property was not in agricultural condition because of the wetlands problem."

## II. Warranty Against Encumbrances

¶17    The Baughs next challenge the trial court's ruling that they breached the covenant against encumbrances. They argue that "a wetlands designation and wetlands restrictions do not rise to the level of an encumbrance within the meaning of the warranty against encumbrances." An encumbrance includes "any interest in a third person consistent with a title in fee in the grantee, if such outstanding interest injuriously affects the value of the property, or constitutes a burden or limitation upon the rights of the fee title holder." *Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 44, 48 P.3d 895 (citations and internal quotation marks omitted).

¶18    In support of their argument, the Baughs cite a number of cases from other jurisdictions holding that a wetlands designation does not constitute an encumbrance. *See Bear Fritz Land Co. v. Kachemak Bay Title Agency, Inc.*, 920 P.2d 759, 761–62 (Alaska 1996); *Frimberger v. Anzellotti*, 594 A.2d 1029, 1031, 1033–34 (Conn. App. Ct. 1991); *Truck South, Inc. v. Patel*, 528 S.E.2d 424, 429 (S.C. 2000); *McMaster v. Strickland*, 409 S.E.2d 440, 442 (S.C. Ct. App. 1991); *Martin v. Floyd*, 317 S.E.2d 133, 136 (S.C. Ct. App. 1984). However, the present case involves not only the existence of a wetlands designation or wetlands restrictions, but a documented *violation* of wetlands restrictions.[5] Favero was not simply restricted in its use of the land but was required to incur

---

5. The trial court held, "[T]hese Federal requirements represent an encumbrance on the property and a breach of the warranty conveyed in the warranty deed." However, our supreme court has previously held that "public statutes restricting the use of the granted premises . . . constitute no breach of covenant or warranty." *Flemetis v. McArthur*, 226 P.2d 124, 126 (Utah 1951); *accord Mortenson v. Financial Growth, Inc.*, 456 P.2d 181, 183 (Utah 1969). Thus, to the extent the trial court's ruling suggests that the mere existence of the wetlands and the wetlands regulations constituted an encumbrance, that ruling was in error.

significant costs to remedy the Baughs' wetlands violations. Only one of the cases cited by the Baughs, *Frimberger*, involves a wetlands violation as opposed to a wetlands designation.

¶19    In *Frimberger*, the Connecticut Appellate Court held that a violation of wetlands restrictions did not constitute an encumbrance on real property where the violation was committed by the seller's predecessor in title, the seller was unaware of it, and the state department of environmental protection had taken no action to compel compliance with the wetlands restrictions. *Frimberger*, 594 A.2d at 1031, 1033–34. The court held,

> Latent violations of state or municipal land use regulations that do not appear on the land records, that are unknown to the seller of the property, as to which the agency charged with enforcement has taken no official action to compel compliance at the time the deed was executed, and that have not ripened into an interest that can be recorded on the land records do not constitute an encumbrance for the purpose of the deed warranty.

*Id.*

¶20    Courts that have considered whether violations of other types of governmental regulations constitute encumbrances have reached mixed results. Some, expressing concern that expanding the definition of encumbrance in this way "would create uncertainty and confusion in the law of conveyancing and title insurance," have suggested that a violation of a governmental regulation can never constitute an encumbrance. *See, e.g.*, *Fahmie v. Wulster*, 408 A.2d 789, 792 (N.J. 1979). But others have determined that a violation of a governmental restriction may constitute an encumbrance when it exists at the time of conveyance, *see, e.g.*, *Wilcox v. Pioneer Homes, Inc.*, 254 S.E.2d 214, 215–16 (N.C. Ct. App. 1979) (holding that an existing violation of a minimum side lot requirement constituted an encumbrance),

especially where the seller is aware of the violation prior to conveying the property or has been specifically ordered to comply with a particular regulation, *see, e.g.*, *Feit v. Donahue*, 826 P.2d 407, 409–11 (Colo. App. 1992) (holding that the sellers' violation of a zoning ordinance, which ultimately resulted in the revocation of the buyers' certificate of occupancy, constituted an encumbrance where the city had previously instructed the sellers to comply with the zoning ordinance in a conditional building permit issued two years prior to the sale); *Brunke v. Pharo*, 89 N.W.2d 221, 222–23 (Wis. 1958) (holding that a building code violation "with respect to which the agency charged with enforcement has begun to take official action is an encumbrance" and distinguishing such circumstances from those where violations existed but no official action had been taken prior to conveyance).

¶21    The latter approach appears to be the most consistent with Utah case law on the subject. In *Brewer v. Peatross*, 595 P.2d 866 (Utah 1979), our supreme court was asked to consider whether the existence of a special improvement district constituted an encumbrance. *Id.* at 867. The court held that while the mere existence of a burdensome condition does not necessarily constitute an encumbrance, a condition that either imposes "some burden upon the property [that] is . . . discoverable from the record" or is "such that the grantor either had or should have had knowledge that there was such a burden" does constitute an encumbrance. *Id.* at 868. Because the sellers in that case were aware that improvements were being undertaken and that the property they were conveying would be assessed costs for the improvements, the court held that the existence of the special improvement district constituted an encumbrance on the property. *Id.*

¶22    While the existence of a special improvement district is not quite the same as governmental restrictions on the use of land, the idea that the existence of an encumbrance depends, in part, on whether the seller knew or should have known of a burden on the property is consistent with the view that a

violation of a governmental regulation on land constitutes an encumbrance on the property if it exists at the time of conveyance and the seller either is aware or should be aware of it. Unlike the wetlands violation in *Frimberger*, the violation in this case was not latent. The Baughs were aware of the wetlands violation and, in fact, committed it themselves. Furthermore, the Army Corps of Engineers had informed the Baughs that their improvements violated the wetlands restrictions and had ordered them to remove the fill dirt and construct a silt fence. Because the Baughs were aware of the wetlands violation and the Army Corps of Engineers had taken action to compel compliance with the wetlands regulations prior to the time the warranty deed was conveyed, the violation is an "interest in a third person" that "constitutes a burden or limitation upon the rights of the fee title holder." *See Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 44, 48 P.3d 895 (citations and internal quotation marks omitted). Accordingly, the trial court did not err in concluding that the Baughs had breached the covenant against encumbrances by conveying the property without disclosing the existence of the wetlands violation.

## III. Good Faith and Fair Dealing

¶23 Finally, the Baughs challenge the trial court's determination that their failure to disclose the existence of the wetlands violation was a breach of the covenant of good faith and fair dealing. "An implied covenant of good faith and fair dealing inheres in every contract." *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193. "Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract." *Id.*

¶24 The Baughs reiterate their argument that Favero waived its right to disclosure of the wetlands violations by failing to object to the Baughs' failure to make disclosures, *see supra* note 1, and argue that their failure to make the disclosures could therefore not have injured Favero's rights under the contract.

The trial court found that Favero would not have gone through with the purchase had the Baughs disclosed the wetlands problem. It further found that Favero did not waive its right to receive the disclosures by failing to object because Favero could not "object to a problem of which it is unaware." The trial court's findings support its determination that the Baughs breached the covenant of good faith and fair dealing. By failing to make the disclosures, the Baughs misled Favero concerning the existence of environmental problems on the property and thereby deprived it of the opportunity to object or cancel the contract in accordance with its rights under the REPC. Thus, the trial court did not clearly err in concluding that the Baughs breached the covenant of good faith and fair dealing by failing to disclose the existence of the wetlands violation.

## IV. Attorney Fees

¶25   Favero requests an award of attorney fees and costs on appeal. The trial court awarded Favero its attorney fees pursuant to the terms of the REPC, which provide that "[i]n the event of litigation . . . to enforce [the REPC], the prevailing party shall be entitled to costs and reasonable attorney fees." "[A] provision for payment of attorney[] fees in a contract includes attorney[] fees incurred by the prevailing party on appeal as well as at trial, if the action is brought to enforce the contract . . . ." *Covey v. Covey*, 2003 UT App 380, ¶ 36, 80 P.3d 553 (alterations and omission in original) (citation and internal quotation marks omitted). "In addition, when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Id.* (citation and internal quotation marks omitted). Thus, as the prevailing party, Favero is entitled to an award of attorney fees and costs reasonably incurred on appeal.

## CONCLUSION

¶26   Because the Baughs failed to deliver the property in generally accepted agricultural condition, they breached the

terms of the REPC and the Escrow Instructions. Furthermore, they breached the covenant against encumbrances in the warranty deed by failing to disclose the existing wetlands violation. They also breached the covenant of good faith and fair dealing by misleading Favero as to the environmental condition of the property. Accordingly, we affirm the trial court's rulings in favor of Favero. As the prevailing party, Favero is entitled to an award of attorney fees and costs on appeal. We therefore remand to the trial court for the limited purpose of calculating Favero's fees and costs reasonably incurred on appeal.

——————————